**STATE of Tennessee, Plaintiff–Appellee,**

v.

**James Ray WADE, Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

Oct. 4, 1993.

---

Charles W. Burson, Atty. Gen. & Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Clyde W. Watson, Dist. Public Defender's Office, Camden, for defendant-appellant.

### *OPINION*

REID, Chief Justice.

The issue for review is the decision of the Court of Criminal Appeals, affirming the trial court, that in a probation revocation proceeding admission into evidence of a toxicology laboratory report, identified only by a probation officer who did not prepare the report, was not error. This Court reaches the contrary conclusion—that the admission of the report was error, and the revocation cannot be sustained on the record before the Court.

On defendant Wade's plea of guilty to possession of a Schedule VI drug with intent to sell, he was sentenced to one year in the Department of Corrections. After serving a portion of the sentence, he was placed on probation, the conditions of which forbade his use of illegal drugs and required his submission to drug tests.

This proceeding was initiated when Wade's probation officer charged him with a probation violation based on the report of a drug test, ordered by the probation officer and performed by Allied Chemical Laboratories of Chattanooga, Tennessee, which reported positive for marijuana. At the probation revocation hearing, the report, over the objection of the defendant, was admitted into evidence. The State presented no other evidence in support of the petition for revocation. The probation officer admitted that Wade had abided by all other terms of his probation. The defendant and his wife testified that he had not used any illegal drugs while on probation. They also testified that for several days prior to the day on which the urine sample used for the test was taken, Wade had taken Advil, an over-the-counter pain medication, for pain associated with pyorrhea of the gums. Apparently without objection by the State, there was admitted into evidence an exhibit described by the Court of Criminal Appeals as "a page from some publication (which appears to be a scientific journal) in support of their contention that Advil could produce a false positive for marijuana." The trial court, relying solely upon the report, revoked the defendant's probation and ordered him to serve the remainder of the sentence.

The defendant insists the admission of the report violated his constitutional right of confrontation, because the technician who performed the test and prepared the report was not called as a witness. The State contends the Court of Criminal Appeals properly held that Wade waived any right to confrontation.

■ The Tennessee Constitution, Article I, Section 9, and the United States Constitution, Sixth Amendment, prohibit proof of an essential element of a crime in a criminal prosecution by the admission of evidence that violates the right to confront and cross-examine adverse witnesses. *State v. Henderson,* 554 S.W.2d 117, 122 (Tenn.1977); *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

■ However, since the issue in a probation revocation proceeding is not the guilt or innocence of the defendant, the right to confront and cross-examine adverse witnesses is not absolute and may be relaxed under certain circumstances. Both this Court and the

United States Supreme Court have recognized that "the full panoply of rights due a defendant" in criminal prosecutions do not apply to parole revocations. In *Black v. Romano,* 471 U.S. 606, 613, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985), the United States Supreme Court stated:

> "[O]ur precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with criminal trial."

This Court stated in *Bledsoe v. State,* 215 Tenn. 553, 387 S.W.2d 811, 814 (1965) (quoting 5 Wharton's Criminal Law and Procedure 392 (Anderson ed. 1957)):

> "[T]he hearing is summary in nature. The defendant is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime...."

■ However, since a probationer's conditional freedom from incarceration is at risk, he must be afforded due process in the revocation proceeding. The United States Supreme Court set forth the minimum requirements of due process in probation proceedings in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Those requirements include a conditional right to confront and cross-examine adverse witnesses. The Court stated:

> [There must be] preliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. [*Morrissey v. Brewer,* 408 U.S. 471, 487, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972)]. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements:
>
> > "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of

evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);* (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole."

*Gagnon v. Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1761–62 (quoting *Morrissey v. Brewer,* 408 U.S. at 489, 92 S.Ct. at 2604) (emphasis added).

> The fourth guarantee clearly establishes that some right to confrontation exists, but the qualifying "good cause" language reflects the flexibility that marks these proceedings and suggests that the confrontation requirement will be relaxed in certain circumstances.

*Downie v. Klincar,* 759 F.Supp. 425 (N.D.Ill. 1991). And, even where there is a showing of good cause, due process requires proof that the report is reliable. *See* Annotation, *Admissibility of Hearsay Evidence in Probation Revocation Hearings,* 11 A.L.R.4th 999 (1982).

In *Wilson v. State,* 521 A.2d 1257 (Md.App. 1987), the court specifically found good cause for failing to call the person who performed the task, but, nevertheless, found the test results insufficient to support revocation. In that case, the state introduced into evidence a urine test report, which, according to the testimony of a probation officer, showed the defendant had recently ingested marijuana. As in the case before this Court, the test had been performed by a private company on contract with the state. The court found that even though no employee of the testing company was called as a witness, the state had established under the circumstances of that case good cause for not calling the technician who performed the test. The court then set forth a rationale that appears to protect the due process rights of a defendant and accommodate the practical consideration

due the state. After discussing the holdings in *Gagnon, Morrissey,* and prior Maryland cases, the court stated:

> A probationer has a limited liberty interest; nevertheless, that person is entitled to minimal due process rights. In *Morrissey* and *Gagnon,* the Supreme Court outlined the minimum due process requirements as applied to parole and probation hearings....

> The *Morrissey* Court held that parolees have "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation.)" 408 U.S. at 489, 92 S.Ct. at 2604. The Court emphasized, however, that the process must be flexible to the extent that a court could consider documentary evidence which may not meet evidentiary requirements applicable to criminal trials.

> ....

> In deciding whether appellant was denied due process, we reiterate that he is entitled to cross-examine witnesses against him, unless a specific finding of good cause to deny the right is made by the trial judge....

> Hearsay evidence is admissible, and a probationer is therefore deprived of cross-examination, only if the hearsay evidence is reliable. The remaining question is whether the hearsay was so unreliable that its introduction would violate appellant's due process if the trial court used it as a basis for revoking appellant's probation.

> ....

> ... We do not interpret *Morrissey,* [or] *Gagnon* ... to mean that the State is entitled to revoke probation based on an unidentified lab test admitted into evidence without proof of its reliability.

521 A.2d at 1260–61 (citations omitted). The Court then remanded the case to determine the test used and its reliability. *Id.* at 1262.

■ The record shows that the proof in this case did not meet the minimum confrontation requirements of *Gagnon.* There was no specific finding by the trial court of "good cause" that would justify the denial of the defendant's right to confront and cross-examine an adverse witness, the technician that prepared the report introduced into evidence, nor was there a showing that the information contained in the report is reliable. The defendant's objections to the admission of the report, made at the beginning of the hearing, again when the probation officer was testifying about the test results reported, and again at the conclusion of the proof, were denied by the trial court without comment. In addition to the failure of the trial court to make a specific finding of good cause, the record would not support any such finding. The record is silent as to why the technician who prepared the report was not called as a witness.

In addition to the absence of a finding of good cause, and the absence of proof on which such a finding could be based, the evidence does not establish that the report was reliable. The sole basis for the revocation of probation was the use of illegal drugs. The only evidence, direct or circumstantial, that the defendant used illegal drugs while on probation was the report. The report does not indicate the method of testing or the name of the technician, nor does it even state that the test was made in conformity with established and reliable procedures. The only explanation of the report was the probation officer's statement that "the drug screen ... showed positive for cannabinoids, which is marijuana." The validity of the test was put at issue by the testimony of the defendant and his wife that he had not ingested illegal drugs since his probation. The "scientific journal" article states that some over-the-counter drugs, such as Advil, can cause false positive findings of marijuana, lending some credibility to defendant's contention that the test results could have been caused by his use of Advil.[1]

---

1. At least one author notes some agreement with the petitioner's general proposition, i.e. the chance of false positive results, but says nothing specifically about Advil. *See,* Richard S. Schottenfeld, *Drug and Alcohol Testing in the Workplace—Objectives, Pitfalls, and Guidelines,* 15 American Journal of Drug and Alcohol Abuse 413, 417–419. Schottenfeld also notes that, as of the time of his writing, April 1989, there were no certification procedures for drug-testing laboratories. *Id.* at 424 n. *. He also noted that the federal government was "moving rapidly" to es-

The result is that, under the United States Constitution as construed in *Gagnon,* the State is not entitled to revoke probation based on an unidentified laboratory test admitted into evidence without a finding of good cause and proof of the reliability of the test report.

This Court has not heretofore considered the application of the Constitution of Tennessee to this precise issue. However, the Court holds that the record in this case does not meet the minimal due process requirements of the Tennessee Constitution, Article I, Section 9. The report was not admissible into evidence because there was no showing of good cause, and, had there been a showing of good cause, the revocation of probation based on the uncorroborated report which contains no significant indicia of reliability, could not be sustained. This conclusion is reached on what this Court considers to be adequate and independent state grounds. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

The Court of Appeals found *State v. Hughes,* 713 S.W.2d 58 (Tenn.1986) to be authority for its decision that the report was admissible. In that case, in which Hughes was convicted of driving while intoxicated, this Court stated that Tennessee's implied consent law, T.C.A. § 55–10–410 (1988), can be enforced so as not to violate the right to confrontation. The Court held that the right to confront and cross-examine adverse witnesses is satisfied if, in addition to meeting the requirements of the statute, the Tennessee Bureau of Investigation lab technician who performed the test for alcohol is present at the trial, if subpoenaed by either the State or the defendant, and if the technician testifies he or she is the State's witness, subject to cross-examination. *State v. Hughes,* 713 S.W.2d at 62. The Court held that when these additional requirements are met, a defendant waives the constitutional right to confrontation by failing to issue a subpoena for the technician. *State v. Hughes,* 713 S.W.2d at 61–62. The Court found in *Hughes* that its decision in *State v.*

*Henderson,* 554 S.W.2d 117 (Tenn.1977) compelled the holding that unless the statute is construed to provide the defendant the opportunity to cross-examine the person who performed the test it would violate the defendant's constitutional rights. *State v. Hughes,* 713 S.W.2d at 61. The Court in *Hughes* obviously grafted provisions onto the statute in order to uphold its constitutionality. The Court stated:

> We are required to indulge every presumption in favor of the constitutionality of legislative acts, to construe an act to save its validity rather than invalidate it and whenever necessary to effectuate legislative intent, to supply language that may reasonably be called for.

*Id.* In the case before the Court, there is no statute authorizing the procedure followed; consequently, the vitality of *Hughes* is not before the Court. However, as noted in *Henderson,* statutory enactments making hearsay evidence admissible do not resolve the constitutional issues of confrontation and due process. *State v. Henderson,* 554 S.W.2d at 118–19.

The judgment of the Court of Appeals and the trial court revoking the probation is reversed, and the case is remanded for further proceedings consistent with this decision.

Costs will be borne by the appellee.

DROWOTA, DAUGHTREY, O'BRIEN and ANDERSON, JJ., concur.

---

tablish such procedures, but whether they were established by the time of Wade's test in February 1991, is uncertain.