IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2008

## HUEY STRADER v. CHARLES TRAUGHBER, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 05-2260-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2007-00248-COA-R3-CV - Filed December 11, 2008**

---

Huey Strader, an inmate in the custody of the Tennessee Department of Corrections, filed a Petition for a Writ of Certiorari in Davidson County Chancery Court, seeking review of the decision of the Board of Probation and Paroles revoking his parole, alleging that the Board acted arbitrarily and illegally by relying on hearsay evidence and on a confidential witness statement, in violation of his constitutional rights to due process and rules applicable to parole revocation proceedings. The trial court denied relief. Finding no error, we affirm the decision of the Chancery Court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

Rich Heinsman, Chattanooga, Tennessee, for the appellant, Huey Strader.

Robert E. Cooper, Jr, Attorney General and Reporter, Arthur Crownover, II, Senior Counsel, for the appellee, Charles Traughber and Tennessee Board of Probation and Parole.

### MEMORANDUM OPINION[1]

### I. Factual and Procedural History

Following an altercation with his wife on November 25, 2004, Huey Strader, on parole since February 17, 1998, was arrested by Officer Rankhorn of the Soddy-Daisy Police Department and

---

[1] Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

charged with domestic assault. After being called to the Strader residence, Officer Rankhorn interviewed Ms. Strader, Mr. Strader and a neighbor, Lindy Smith. Ms. Strader told him that she and Mr. Strader had been arguing and, in the course of the argument, Mr. Strader hit her over the head with a hammer; Officer Rankhorn saw a "small, visible knot" on Ms. Strader's head. Mr. Strader denied assaulting his wife and stated that Ms. Strader had assaulted him; Officer Rankhorn did not observe any visible marks on Mr. Strader. Ms. Smith stated that Mr. Strader had approached her with a closed fist as she was on the phone talking to the police. Feeling that "Mr. Strader was the primary aggressor in the incident and that Ms. Strader was intimidated, in fear of her life, for coming back to the residence," Officer Rankhorn placed Mr. Strader under arrest. A hearing was held on December 14, 2004, in Soddy-Daisy municipal court on the assault charge. According to Officer Rankhorn, Ms. Strader testified "completely opposite of what she told me that night," as a result of which the case was dismissed.

Parole revocation procedures arising out of the events of November 25 were initiated by the Board of Probation and Parole ("the Board") on November 29, 2004. Mr. Strader was charged with violation of two of the rules applicable to his probation. A preliminary hearing on the charges was held at Brushy Mountain Correctional Facility on February 24, 2005, resulting in the dismissal of one of the alleged violations; a final hearing on the other violation was set for April 27, 2005.[2]

The April 27 hearing was conducted by Hearing Officer Jane Joyce; Steve Braz, Mr. Strader's parole officer, presented for the Board and Mr. Strader was represented by counsel. As a preliminary matter, Mr. Braz requested that he be permitted to submit a written confidential statement in lieu of a personal appearance by one of his witnesses whom, he said, was afraid to appear and had asked for confidentiality. After reviewing the statement, Hearing Officer Joyce found that there was good cause to excuse the witness and to admit the statement; she also granted the confidentiality request.

Officer Rankhorn testified at the revocation hearing and was the only witness to testify as to the events of November 25, 2004. As he was not present during the altercation between Ms. Strader and Mr. Strader, Officer Rankhorn's testimony was largely hearsay, to which Mr. Strader repeatedly objected. Gale Reed, another parole officer, testified to the fact and circumstances of a parole violation report that had been filed against Mr. Strader in June 2004, in which Mr. Strader was charged with assaulting his wife, her daughter and possession of weapons in violation of his parole. That proceeding had been dismissed when Ms. Strader and the children refused to come to the revocation hearing and testify.

Hearing Officer Joyce found that Mr. Strader had violated the terms of his parole and recommended that his parole be revoked; the recommendation was adopted by the Board. Mr.

---

[2] The charge which went to final hearing was an alleged violation of Rule 11, which stated: "I will not engage in any assaultive, abusive, threatening or intimidating behavior. Nor will I participate in any criminal street gang related activities as defined by T.C.A. 39-11-106(36). I will not behave in a manner that poses a threat to others or myself." Mr. Strader was charged with violating this rule in that: "[O]n or about 11/25/04 Subject engaged in assaultive, abusive and threatening behavior."

Strader thereafter filed a Petition for a Writ of Certiorari in Davidson County Chancery Court and following briefing and a hearing, the court held that Mr. Strader had "failed to demonstrate any arbitrariness, illegality or fraud in the decision" to revoke his parole and dismissed the petition. On appeal, Mr. Strader raises the following issues: (1) Whether the Board erred in revoking his parole based on hearsay evidence which was admitted in violation of his rights to due process; (2) whether the admission of the confidential witness statement violated his due process right to confront and cross-examine adverse witnesses; (3) whether the Board showed that he violated his parole by a preponderance of the evidence.

## II. Scope of Review

The Parole Board's decisions to revoke or rescind parole are only reviewable through the common-law writ of certiorari. *Miller v. Tenn. Bd. of Paroles*, No. 01A01-9806-CH-00293, 1999 WL 43263 (Tenn. Ct. App. Feb. 1, 1999); *Sanders v. Tenn. Bd. Of Paroles,* 944 S.W.2d 395 (Tenn. Ct. App. 1996). The inquiry before this court, then, is whether the Board exceeded its jurisdiction or acted illegally, fraudulently or arbitrarily; we do not review the intrinsic correctness of the decision and will not grant relief if the decision was reached in a lawful and constitutional manner. *Miller, supra; see also Maney v. Tenn. Bd. Of Paroles*, No. 01A01-9710-CV-00562, 1998 WL 755002 (Tenn. Ct. App., Oct. 30, 1998).

## III. Discussion

Mr. Strader complains that the admission of Officer Rankhorn's hearsay testimony and the admission of the confidential witness statement in lieu of personal testimony violated his constitutional rights to due process of laws.

A parolee facing revocation of parole enjoys some measure of due process protection, including a conditional right to confront and cross-examine witnesses.[3] *See State v. Wade,* 863 S.W.2d 406 (Tenn. 1993), *citing Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Confrontation and cross-examination of witnesses, however, can be dispensed with for good cause. *See Miller, supra.; Sanders v. Tenn. Bd. Of Paroles,* 944 S.W.2d 395 (Tenn. 1997) *citing Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The question whether good cause exists "is factually driven and may . . . depend on the nature and purpose of the evidence sought to be introduced." *Miller*, 1999 WL 43263 at *5.

---

[3] The Rules of the Board applicable to parole revocation proceedings are contained at Tennessee Comp. R. and Regs., Chapter 1100-1-1-.13. Specifically, at the final revocation hearing, the parolee has the rights set forth at R. 1100-1-1-.13(9), including the right to present witnesses, R. 1100-1-1-.13(9)(a)) and the right to confront and cross-examine witnesses unless the Board finds good cause for not allowing same R. 1100-1-1-.13(9)(b)). Whether a violation has occurred is determined by a preponderance of the evidence (R. 1100-1-1-.13(9)(f)). Proceedings are conducted informally consistent with the requirements of due process, but technical rules of evidence do not apply. R. 1100-1-1-.13(9)(i). Evidence upon which a finding of a violation is based may be withheld from the parolee if it is declared confidential by the Board. R. 1100-1-1-.13(9)(j).

In support of the admission of the statement, Officer Braz advised that there was a "risk of harm" to the witness and that the witness was "afraid to appear." Hearing Officer Joyce then reviewed the statement *in camera* and granted the request. In holding the statement to be admissible and the identity of the witness confidential, she determined that there was a "reasonable element of fear on the part of the person giving the testimony." As part of the certiorari proceeding, the chancellor likewise reviewed the statement *in camera* and concluded:

> After reviewing the statement, the Court concludes as a matter of fact the statement contains sufficient detail and explanations of the witness' fear and the basis for that fear that the hearing officer was justified in not requiring the witness to appear at the final revocation hearing but, instead, testify through the confidential witness statement. The confidential witness statement is so compelling in communicating the witness' fear, the basis for the fear and why contradictory previous statements could have been made, that the Court concludes that the hearing officer did not act illegally or arbitrarily in allowing the statement to be admitted into evidence and to deny the right of cross examination and confrontation.

We agree with the chancellor that the hearing officer's determination was not arbitrary and capricious. The chancellor examined the statement in detail and made the factual determination that good cause existed due to a risk of harm to the witness and the witness' fear.[4] A finding that a witness would be "exposed to a significant risk of harm" is a sufficient showing of good cause to deny confrontation. *See Livingston v. State,* No. M1999-01138-COA-R3-CV, 2001 WL 747643 at *12 (Tenn. Ct. App. July 5, 2001) *citing Morrissey v. Brewer,* 408 U.S. at 486-87.

Mr. Strader argues that the only person who could have authored the statement was either Ms. Strader or Ms. Smith and that neither would have reason to be fearful of testifying, since each had previously appeared at trial and testified under oath in open court in the presence of Mr. Strader; and that "the only adversarial questioning these statements ever received was at trial where they both recanted under oath." This objection, which was also made at the final parole revocation hearing, goes to the veracity of the declarant's expression of fear. This question of veracity was resolved against Mr. Strader and there is nothing in the record before us to hold that the chancellor's findings, recited above, are not supported by the statement.

Mr. Strader also complains that the hearsay testimony of Officer Rankhorn was unreliable since he did not witness the alleged assault and, as a consequence, his testimony was based entirely on the reports of Ms. Strader or Ms. Smith. Mr. Strader correctly points out that hearsay testimony is admissible in a parole revocation proceeding only if the hearsay evidence is reliable. *State v. Wade, supra.*; *see also* Tennessee Comp. R. and Regs., Chapter 1100-1-1-.13(9)(i). Officer

---

[4] The confidential statement was not made a part of the record. The Petitioner had filed a motion for discovery of the statement, but the motion was never set for hearing or ruled upon. The chancellor's review of the statement was done pursuant to motion of the Board.

Rankhorn testified to his observations when he arrived at the Strader residence and to statements made in the course of his investigation. Significantly, he testified that Ms. Strader was crying hysterically and rubbing her head when he arrived and that she was "tensed up." Ms. Strader related to him that she and Mr. Strader had gotten into an argument and that Mr. Strader had struck her in the head with a hammer. Officer Rankhorn also related the conversation he had with Mr. Strader, who confirmed the argument but insisted that Ms. Strader was the aggressor. Based on these conversations and Officer Rankhorn's personal observations, Mr. Strader was arrested.

Unlike the testimony held inadmissible in *Wade*, there was independent evidence - Officer Rankhorn's personal observations - to support a finding that the statements about which he testified were reliable. Mr. Strader had full opportunity to cross-examine Officer Rankhorn and did so with vigor, securing testimony that Ms. Strader acknowledged that she and Ms. Smith had been drinking; that there were several beer cans in Ms. Smith's trailer; that no hammer was found in the Strader trailer; and that, in Officer Rankhorn's opinion, Ms. Strader was untruthful.[5] There is no indication in this record that Officer Rankhorn's investigation was inadequate. As noted by the chancellor, considerations of credibility of witnesses and weight of testimony were for the Board and cannot be disturbed on appeal.

There was sufficient evidence properly admitted to support the Board's finding that Mr. Strader violated Rule 11 of the rules applicable to his parole. Consequently, the Board did not err when it revoked his parole.

## IV. Conclusion

For the foregoing reasons, we find no error in the determination by the trial court and, consequently, affirm same. Costs are assessed against Mr. Strader, for which execution may issue, if necessary.

_____
RICHARD H. DINKINS, JUDGE

---

[5] Officer Rankhorn testified that "either she lied in court or she lied that night, you know. . . . I don't think she was lying that night by way of her actions. . . ."