IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2010

**STATE OF TENNESSEE v. ANDRA DENNIS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-03344     James M. Lammey, Jr., Judge**

**No. W2010-00259-CCA-R3-CD  - Filed October 20, 2010**

The defendant, Andra Dennis, appeals the trial court's revocation of his probation, arguing that there was insufficient evidence to support the trial court's finding that he violated the terms of his probation.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Robert Wilson Jones, District Public Defender; Harry E. Sayle, III, Assistant Public Defender (on appeal); and Jennifer Case, Assistant Public Defender (at trial), for the appellant, Andra Dennis.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On July 1, 2008, the defendant pled guilty in the Shelby County Criminal Court to kidnapping, rape, and theft over $10,000, for which he received an effective sentence of ten years to be served on supervised probation.  The State subsequently petitioned for revocation of the defendant's probation, alleging that the defendant had violated its terms by his August 10, 2009 arrest for theft of property and by not complying with the requirements of "Project WIT," a halfway house to which the defendant had been assigned.

A revocation hearing was held on December 18, 2009, and January 14, 2010. At the December 18 hearing, Maryetta Rudd of the Tennessee Board of Probation and Parole testified that she had submitted two separate petitions for revocation of the defendant's probation. In the first, she alleged that the defendant had violated his probation by his August 10, 2009 arrest for theft of property $500 or less; and in the second, she alleged that the defendant had violated his probation by not keeping his scheduled medical appointments and by appearing "to want to be independent from Project WIT's arrangements." With respect to the particulars of the defendant's behavior at Project WIT, Rudd read aloud from her petition, which apparently quoted from the defendant's Project WIT progress report:

> On Monday, September 7th, 2009, [the defendant] returned from a day pass and was observed by staff and residents as being intoxicated. [The defendant] was given the opportunity to go upstairs and lie down. However, he was observed running into the bathroom and hitting the walls. He left three holes in the wall. [The defendant ] was . . . escorted out of the center by the police and transported to 135 Pauline Crisis Intervention Center. He was released the following day.

Rudd acknowledged that a probation violation warrant had previously been issued on the defendant on August 7, 2008. On cross-examination, she testified that she had information in her notes indicating that the defendant had spent time in "mental health units" but had no specific information regarding his diagnosis.

Following Rudd's testimony, the prosecutor informed the court that, although subpoenaed, the police officer involved in the defendant's August 10, 2009 arrest for theft at a Memphis Mapco station had forgotten about the date and consequently failed to show up for the hearing. The trial court, therefore, continued the hearing until January 2010 to allow the State an opportunity to re-subpoena the officer.

When reciting the history of the proceedings at the January 2010 continuation of the hearing, the prosecutor mistakenly informed the court that the arresting officer had testified at the previous hearing. Defense counsel then called the defendant to the stand, who testified that he was off his "psyche" medication, which had been prescribed to control his "schizophrenic symptoms and depression," at the time of his arrest on the theft charge. He said that Project WIT had arranged an appointment for him with one of their physicians but that he was left on his own to try to find the physician's office, got lost, and ended up in the wrong part of town. The defendant explained that he was hot, tired, frustrated, and depressed and that the people he encountered on the street were "hustling" him and threatening to rob him, which was why he entered the Mapco station. He did not admit the theft or give any specifics surrounding his arrest.

The defendant complained that the staff members at Project WIT were not very helpful and said that he believed that "Genesis House," which was in the process of evaluating his application for admission, would better meet his needs. He further testified that he was currently enrolled in "moral recognition therapy, AA, life skills, [and a] parenting class."

When questioned on cross-examination about the episode described in the Project WIT progress report, the defendant acknowledged that he had been intoxicated. He also conceded that it was possible that he had put holes in the bathroom wall, although he had no memory of having done so. The defendant said that he had a history of difficulty with the Project WIT staff member who had confronted him about his drinking, and he explained that he always "los[es] it" when he gets depressed and believes he is being mistreated. The defendant further testified that the rape and kidnapping convictions for which he had been on probation resulted from his actions with his girlfriend, who, he claimed, had not related the events accurately. Finally, he stated that his first probation violation resulted from his failure to register as a sex offender.

Upon further questioning by the trial court, the defendant acknowledged that he had violated his probation in a previous case by his 2004 conviction for vandalism under $500. The trial court then observed that the defendant had been arrested on September 2, 2008, for theft of property and had pled guilty to the offense on October 9, 2008. The court noted that it had not been informed of the arrest or the resulting conviction and that both occurred in the time period between the issuance of the defendant's first and second warrants for violation of probation.

At the conclusion of the hearing, the trial court found that the defendant had violated his probation by committing the theft offenses and by his failure to follow the rules of Project WIT. Accordingly, the trial court revoked the defendant's probation and ordered that the defendant serve his sentence in incarceration. The trial court's ruling states in pertinent part:

> [W]e've exhausted all avenues to help [the defendant]. . . . He talks a good talk; he makes a good presentation. He actually makes my heart bleed for him; but now is the time he needs to take responsibility for his actions. The State of Tennessee has had enough of [the defendant]. He has been playing the system for too long; and he is in clear violation of probation; and I find that to be true based on two thefts of property and his unwillingness to abide by the rules.

Thereafter, the defendant filed a timely notice of appeal to this court.

# ANALYSIS

The defendant contends on appeal that there was no substantial evidence in the record to support the trial court's finding that he violated the terms of his probation. In support, he points out that there had been no disposition of his August 2009 theft case at the time of the hearing and that no evidence was presented at the hearing with respect to the facts surrounding the charge. He further argues that the probation officer's testimony, which involved her "reading from a second-hand report regarding the alleged incident at Project WIT, was the weakest sort of hearsay" and "unreliable" to meet the State's burden of showing a violation of probation by a preponderance of the evidence. The State responds by arguing, *inter alia*, that there is substantial evidence to support the revocation of the defendant's probation in the form of the probation officer's testimony and the admissions of the defendant to having violated the rules of the halfway house. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (Supp. 2009). The revocation of probation lies within the sound discretion of the trial court. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

The defendant is correct in that a trial court may not rely on the mere fact of an arrest or an indictment, without some further evidence in support of the allegations, to revoke a defendant's probation. See id. at 83 n.3. Typically, a revocation on the basis of a new arrest requires the State to "produce evidence in the usual form of testimony" in order to establish the probationer's commission of another offense while on probation. State v. Walter Lee Ellison, Jr., No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App., May 29, 1998). Here, the prosecutor mistakenly informed the trial court, without any objection by defense counsel, that the arresting officer had testified at the previous hearing with respect to the defendant's August 10, 2009 arrest for theft. The trial court apparently believed that such testimony had been presented in finding that the defendant had violated his probation

-4-

by his commission of the August 10, 2009 theft.

The trial court also, however, found that the defendant had violated his probation by his failure to comply with the rules of the halfway house. A trial court may admit reliable hearsay evidence in a probation revocation hearing so long as the opposing party is given a fair opportunity to rebut the evidence and the evidence was not "secured in violation of the United States or Tennessee constitutions." Tenn. Code Ann. § 40-35-209(b) (Supp. 2009); see State v. Wade, 863 S.W.2d 406, 409 (Tenn. 1993). The record in this case contains not only the testimony of the probation officer about the defendant's failure to follow the rules of Project WIT but also the admission of the defendant that he had returned to the house intoxicated, lost control of himself after being confronted by a staff member with whom he had been having problems, and may have knocked holes in the bathroom walls in his state of intoxication and anger. This evidence, alone, was sufficient to support the trial court's finding that the defendant had violated the terms of his probation.

## CONCLUSION

We conclude that the record supports the trial court's finding that the defendant violated the terms of his probation by his failure to comply with the rules of the halfway house to which he had been assigned. Accordingly, we affirm the order of the trial court revoking the defendant's probation.

_____
ALAN E. GLENN, JUDGE