IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Remanded July 18, 2025

**STATE OF TENNESSEE v. SHENESSA L. SOKOLOSKY[1]**

**Appeal from the Criminal Court for Smith County**
**No. 2017-CR-11      Brody Kane, Judge**

———————————————————

**No. M2022-00873-CCA-R3-CD**

———————————————————

The Tennessee Supreme Court has remanded this case for consideration of the Defendant's appeal from the Smith County Criminal Court's probation revocation of her two consecutive eleven-month, twenty-nine-day sentences for her guilty-pleaded misdemeanor convictions for marijuana possession and possession of drug paraphernalia. *See State v. Shenessa L. Sokolosky*, --- S.W.3d. ---, No. M2022-00873-SC-R11-CD, 2025 WL 2016420 (Tenn. July 18, 2025) (reversing *State v. Shenessa L. Sokolosky*, No. M2022-00873-CCA-R3-CD, 2024 WL 1780085 (Tenn. Crim. App. Apr. 25, 2024)). This court concluded in its previous opinion that the Defendant's appeal was moot because she had fully served her sentence and was no longer constrained by confinement or probation supervision. The Tennessee Supreme Court disagreed and concluded that the mootness doctrine does not apply because a probation revocation may result in future adverse consequences, even after completion of a sentence. Upon further review, we reverse the judgment of the trial court and remand for further findings of fact pursuant to *State v. Wade*, 863 S.W.2d 406, 409 (Tenn. 1993). We, likewise, remand for the entry of a corrected judgment form in Count 6 to reflect consecutive service with Count 5 and for the entry of judgment forms, if necessary, reflecting a dismissal of the charges in Counts 2, 3, 4, and 7.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of Criminal Court Reversed; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. TOM GREENHOLTZ, J., filed a dissenting opinion.

Comer L. Donnell, District Public Defender; Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Director; Brittany Davis Deatherage (at revocation hearing), Assistant District Public Defender, for the Appellant, Shenessa L. Sokolosky.

---

[1] The record contains various spellings of the Defendant's name. We use the spelling contained in the indictment.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jason Lawson, District Attorney General; and Jack A. Bare, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 16, 2019, the Defendant pleaded guilty to marijuana possession and to possession of drug paraphernalia, at which time she received two consecutive eleven-month, twenty-nine-day sentences to be served on supervised probation. The guilty plea hearing transcript is not included in the appellate record.[2] A February 19, 2020 probation violation warrant alleged that the Defendant had not reported to her probation "case officer" since November 1, 2019, and that she had not made any payments toward court costs. On April 28, 2022, more than two years later, the warrant was served upon the Defendant, who was held without bond.

On May 23, 2023, the Defendant filed a motion to dismiss the revocation proceedings on the basis that the "policies and practices" of the former private, for-profit probation company supervising the Defendant's probation violated principles of due process and the requirements for warrants. The Defendant likewise argued that employees of the current, county-operated probation office could not testify about the warrants obtained by the private probation company because the warrants contained inadmissible, unreliable hearsay. Notably, the motion stated that the private probation officer, Jenna Meness, supervising the Defendant testified in general sessions court in connection with an unrelated case that Ms. Meness's policy and practice was "to directly relay offers and enter into plea deals" for a defendant's punishment "for violations of probation sworn out by the private company, with financial interests, in Smith County General Sessions Court." The motion also stated that Ms. Meness testified that it was her policy and practice "to require probationers who were about to expire to execute a 'PROBATION AGREEMENT' in her office that would extend their probation" one year "without an attorney present and without a hearing in open court, or a warrant for arrest." The motion stated that in cases involving two other defendants, Ms. Meness had previously testified in the general sessions court that her office had access to presigned warrants by the former general sessions judge. In the present case, the parties and the trial court did not dispute Ms. Meness's previous testimony in the general sessions court.

---

[2] *See* T.R.A.P. 24(b); *see also State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal, which includes the obligation to have a transcript of the guilty plea hearing prepared); *State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023).

At the June 2, 2022 hearing on the motion to dismiss the revocation proceedings, Mary Bush, Director of Smith County Misdemeanor and Recovery Court Probation, testified that she had been employed by Smith County for approximately one year and that she had worked previously as a probation officer with the Tennessee Department of Correction for three and one-half years. Ms. Bush stated that before she began working as a probation officer for Smith County, misdemeanor probation was supervised, in part, by Smith County and, in part, by a private, for-profit company.

Ms. Bush testified that she did not have a financial stake in the outcomes of her probationers' cases and that her income was unaffected by the trial court's decisions at revocation proceedings. She said that she had testified in other cases about the policies and procedures of the private probation company, which previously supervised the Defendant's probation. Ms. Bush said that she never used presigned probation violation warrants and that she never extended the probationary period for failing to pay costs and fees without having the probationer appear in court for a hearing and with an attorney. She said that she reviewed the monthly court costs with each of her probationers. She said, as well, that about one month before probation was scheduled to expire, she explained to the probationer the amount owed and that if the probationer could not pay, a warrant would be "issued based on costs to discuss . . . before the judge." She said that she did not extend probationary periods in her office "without any lawyers present."

Ms. Bush testified that some of the files she "inherited" from the private probation company "were in disarray." She said that she and the prosecutor reviewed some of these files and that "we . . . got the warrants I believed were not appropriate dismissed." Ms. Bush said that she reviewed all of the files and that she ensured "no inappropriate actions [were] taken." When asked to explain the meaning of "inappropriate," she said it was primarily "warrants that appeared to be presigned." The trial court asked how she could determine if a warrant was presigned, and Ms. Bush stated, "It really, you couldn't tell, unless you saw the original, but the only ones that I would question were the ones that were handwritten, because that was something that I was unfamiliar with. As a prior probation officer, we've never handwritten any type of warrant." She clarified that the affidavit portion of a probation violation warrant would be handwritten. The defense stipulated that the probation violation warrant in this case was not handwritten.

A February 2020 general sessions probation violation warrant in an unrelated case was received as an exhibit. The warrant reflects a handwritten affidavit stating that the defendant refused a search of his vehicle when stopped by the police, violating the rule that he would agree to a search without a warrant. The affidavit was not notarized but was signed by Sara Brooks. The warrant was signed by a general sessions court judge, but the signature is not legible. Ms. Bush reviewed the document and stated that Ms. Brooks's married name was Meness. Ms. Bush stated that she reviewed this document previously

and that "an order was done to dismiss [the defendant] from probation." An August 17, 2020 "probation amendment" in connection with this defendant was received as an exhibit and reflects that the defendant's probation was extended for one year "upon the request of the misdemeanor probation officer." Although "Judge Michael Collins" is typed below the general sessions judge's signature line, the signature appears to be that of Judge "Randy Wakefield."

When asked if the private probation company attempted to "abscond" with the probationers' files, Ms. Bush stated, "Yes. The reason why [Ms. Lindstorm] didn't take them was, because she wanted the filing cabinets, inside the filing cabinets were the files. However, they were too heavy, so the files were dumped in the floor. . . . They've been in my custody ever since." Ms. Bush said that she could not determine if anything had been removed or missing from the files before she took custody of them. She said that although all of the probationers' files were located, the files were in "disarray."

Ms. Bush testified that she did not have any personal knowledge of the allegations contained in the probation violation warrants prepared by the private probation company. She agreed that she was not present for any of the meetings or telephone calls between the probationers and the private probation supervisors. She agreed she did not have access to any text messages or emails that might have been exchanged between probationers and the private probation supervisors. When asked if "we think that those fill-in-the-blank warrants are logically the presigned warrants," Ms. Bush stated, "Yes." She said, though, that "we have never been told that." She agreed that she did not have a method for determining which, if any, warrants were presigned.

On cross-examination, Ms. Bush testified that she inherited the Defendant's file from the private probation company and that an outstanding probation violation warrant existed. Ms. Bush agreed that although "things were a mess" because of the private probation company, her review of the Defendant's file did not reveal anything Ms. Bush deemed "inappropriate or missing." She said she did not find a presigned warrant or any probation extensions for a previous violation in the Defendant's file. Ms. Bush said that the Defendant reported to the private probation office for about two months before the violation warrant was filed.

Ms. Bush reviewed the probation violation warrant in this case and testified that the affiant was Jenna Meness, who worked at the private probation company. Ms. Bush stated that she was not employed by Smith County when the warrant was obtained. She said, though, the warrant reflected the signatures of Ms. Meness and of a judge, the rules of probation alleged to have been violated, the Defendant's term of probation, the court clerk's stamp, and the date. Ms. Bush stated that she did not find anything wrong with the warrant.

- 4 -

The February 19, 2020 criminal court probation violation warrant was received as an exhibit. The warrant reflects that Ms. Meness signed the affidavit, which alleged that the Defendant violated the rule requiring her to "keep all appointments with case officer" by not reporting to the probation office since November 1, 2019, by missing her last appointment on November 8, 2019, and by not contacting the probation office. The warrant, likewise, alleged that the Defendant violated the rule requiring her to follow all of the case officer's instructions by (1) not reporting to the probation office and (2) by not making "payments as scheduled." The warrant also alleged that the Defendant violated the rule requiring her to pay court costs, fines, and supervision fees as directed. Ms. Meness's signature was notarized, and the warrant was signed by Criminal Court Judge Brody Kane. The warrant reflects the circuit court clerk's stamp, and the affidavit was typed.

On redirect examination, Ms. Bush testified that she possessed no personal knowledge about the allegations in the Defendant's probation violation warrant but that her review of the file reflected the Defendant stopped reporting to the probation office, which was the basis of the allegation. She agreed, though, she had no personal knowledge of the information contained in the file, although she relied upon its contents.

Upon examination by the trial court, Ms. Bush testified that four filing cabinet drawers of probation violation warrants were obtained from the private probation company. She agreed that she became the supervising officer in the Defendant's case one year before the motion hearing and that she had not seen the Defendant since becoming her probation officer.

Smith County Circuit Court Deputy Clerk Stacey Dias testified that she was responsible for maintaining court files, including the Defendant's file. Ms. Dias reviewed the court file and stated that it was "[p]retty much" in order. She said that the Defendant pleaded guilty on August 15, 2019, and received consecutive sentences of eleven months, twenty-nine days to be served on supervised probation. Ms. Dias said that the probation violation warrant was issued on February 19, 2020; that the affiant, Ms. Meness, signed the affidavit; and that Criminal Court Judge Body Kane signed the warrant. Ms. Dias agreed that the warrant reflected the allegations against the Defendant, the term of probation, the court clerk's stamp, and the date.

Ms. Dias testified that at the time of the motion hearing, the Defendant owed an aggregate of $2,277 in fines, costs, and fees and that the Defendant had not made any payments.

The recordings of three unrelated general sessions court probation revocation hearings were received as an exhibit. Neither the trial court nor the State disputed the contents of the recordings, which were offered as further evidence of the private probation

company's probation policies and practices. In the probation revocation hearings related to L.M.W.[3] and C.W., Ms. Meness testified that she was not an attorney, that her practice was to make probation extension offers to probationers outside the presence of counsel, and that she followed this practice in the defendant's case. In the probation hearing related to D.B., Ms. Meness testified that the defendant violated his probation by failing to meet with his probation officer. She explained that she used presigned probation violation warrants but did not recall if a presigned warrant was used in this case. She stated that if she ran out of presigned warrants, she used "handwritten" warrants.

The trial court determined that it did not need to review the recordings. The trial judge stated that although he was "troubled" by what had occurred in general sessions court, he had been the judge who signed the Defendant's revocation warrant. The court stated that if it received a warrant without a notary seal, it sent "it back." The court stated that if it received a warrant with a notary seal but without a signature, which had previously occurred in other cases, it sent the warrant back "with a strong rebuke from the Court." The court further stated that its usual practice was to review a probation revocation warrant while a probation officer was present. The court found as follows:

> I also have the testimony of [Ms. Bush] . . . that she never saw [the Defendant]. This was early on. This would have been shortly before Ms. Bush took over. She had not seen [the Defendant] in that period of time. And I also have testimony of Ms. Dias that no payments were made. This would be somewhat corroborative of what the allegations are made here within the affidavit itself.
>
> If this was a different situation, where this was a warrant that came in and it was not followed up by some of the supervision and not corroborated by what, this testimony that's corroborated the allegations that's in this affidavit, I think the Court would be more inclined to grant the defense motion. But I'm satisfied in this one, that this document is what it purports to be, based on my practice and the testimony of the two witnesses that offered testimony.

The court found that the affidavit "is what it purports to be and that the business record exception would be satisfied in this instance, based on the facts I have before me in this matter."

---

[3] We use the initials of other probationers, as their names are irrelevant to this appeal.

At this juncture, the trial court permitted the defense to make additional argument. The defense argued that it had the right to cross-examine Ms. Meness, the affiant of the probation violation warrant. The court interjected, asking if Ms. Meness were available and if anyone had attempted to subpoena her. Defense counsel said that the State had never presented Ms. Meness as a witness until counsel "subpoenaed her last time." Counsel said she attempted to subpoena Ms. Meness in this case but that it "didn't get served." Counsel said that Ms. Meness "never comes to any of these hearings" and noted that the jail was "full" of defendants whose cases involved similar circumstances.

Defense counsel argued in connection with the business records exception to the hearsay rule that the information contained in the warrant was untrustworthy based upon the practices and policies of the private probation company. Although counsel commended Ms. Bush for "clean[ing] this up," counsel argued that Ms. Bush did not have personal knowledge of the facts alleged in the warrant to establish probable cause.

The trial court stated that it had never signed a warrant without a sworn affidavit, that it had not done "what was done in the General Sessions Court of this county," and that it had not extended any defendant's probation "without [a defendant's] coming to Court first." The court found that "what was occurring in General Sessions . . . was not happening here in the Criminal Court of this district." The court denied the motion to dismiss and immediately held a probation revocation hearing.

At the revocation hearing, Ms. Bush testified that she inherited the Defendant's file, which contained an active probation warrant, from the private probation company. She said the warrant was typed and that she was not the affiant. She described a typed affidavit as "correct" and a handwritten affidavit as not correct. She said the trial judge presiding over the revocation hearing signed the warrant.

Ms. Bush testified that on August 15, 2019, the Defendant was placed on supervised probation for two years, which would have expired on August 14, 2021. A copy of the probation violation warrant was received as an exhibit over the defense's hearsay objection. Ms. Bush stated that Ms. Meness, who was employed by the private probation company, was the affiant, that the trial judge signed the warrant on February 19, 2020, and that it was filed with the court clerk's office on February 24, 2020. Ms. Bush stated that the warrant alleged that the Defendant had not reported to Ms. Meness since November 1, 2019,[4] that

---

[4] The transcript reflects Ms. Bush stated that the Defendant had not reported to her probation officer since "November the 11th of 2019" and that the Defendant "missed" the last appointment on "November the 8th of 2019." We infer from the record that either Ms. Bush misspoke and should have stated November 1, rather than November 11, as the Defendant's last report date or that the transcript contains a typographical error. Regardless, Ms. Bush read from the warrant, which is contained in the record and which states the Defendant had not reported to the probation office since November 1, 2019.

the Defendant had "missed" the last appointment on November 8, that the Defendant had not had any contact with the probation office since November 8, that she had not "made payments as scheduled," and that she had not made payments toward court costs.

Ms. Bush testified that she had never "seen" or "supervised" the Defendant. Ms. Bush stated that she did not have any personal knowledge of the Defendant's probation appointments, although she relied on the contents of the file, which reflected "that the last scheduled appointment was November 11, 2019, that her signature was on, and there's no more after."[5] Ms. Bush agreed that she had no knowledge of any telephone calls that might have occurred and that she did not have access to any of Ms. Meness's telephone records. Ms. Bush said that she did not have any knowledge about whether the Defendant had been incarcerated. Ms. Bush said, though, that the probation violation warrant was served when the Defendant was incarcerated in the Davidson County Jail. Ms. Bush agreed that her testimony was based solely upon the contents of the file she inherited from Ms. Meness.

The trial court inquired about the Defendant's reporting after Ms. Bush became the Defendant's probation officer in April 2021. Ms. Bush testified that the Defendant had not reported to her office. Ms. Bush, likewise, said that since becoming the supervising probation officer, the Defendant had not made any payments toward fines, costs, and fees.

Ms. Dias testified that her job was to maintain the court files and enter information into the court clerk's computer system. When asked about the status of the Defendant's "court fines and costs," Ms. Dias said the Defendant owed $2,277 and had not made any payments since being placed on probation.

The defense objected and argued that the State was required to show that the Defendant "willfully did not pay" and that the State had failed to present any evidence in this regard. Defense counsel objected to any revocation on the basis of court costs and fines.

The trial court found by the preponderance of the evidence that the Defendant violated the conditions of her release by failing to report to her probation officer and by failing to pay costs and fines. The court acknowledged that it did not know if the Defendant had been incarcerated but found that no evidence showed she had been incarcerated. The court noted that the warrant had been pending for an extensive time and that "[u]sually they do like a little search to see if you're in jail. So, I'm going to find that you violated the terms of your probation."

---

[5] Again, the warrant, which was contained in the file, reflects that the Defendant last reported to her probation officer on November 1, 2019, and that the Defendant did not report to her probation officer on November 8. Any reference to November 11, is a typographical error or a misstatement by the witness.

The trial court found that this was the Defendant's first probation violation and that the Defendant had been in confinement for thirty-five days. The court returned the Defendant to supervised probation after extending the supervision period by eleven months, twenty-nine days. The court provided the Defendant with thirty days to "get back on [her] feet" before requiring her to make twelve equal payments to resolve the outstanding $2,277 fines, costs, and fees. The record contains a June 2, 2022 revocation order reflecting that the Defendant was provided credit for time served and returned to probation with an eleven-month-twenty-nine-day extension of probation.

However, for reasons not explained in the record, the trial court entered a June 8, 2022 "AGREED ORDER DENYING DEFENDANT'S MOTION TO DISMISS PROBATION VIOLATION." The typed order states that the matter came before the trial court on June 2, upon the Defendant's motion to dismiss, and that the court found that "Smith County Misdemeanor Private Probation's records are reliable and trustworthy hearsay," with the added handwritten words "in this case." The order states that the motion to dismiss was denied. The Defendant filed a timely notice of appeal on June 28, 2022.[6] This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking her probation. She argues that the probation violation warrant should have been excluded from evidence because it contained inadmissible hearsay. Alternatively, the Defendant asserts that even if the warrant contained reliable hearsay, the State failed to prove by a preponderance of the evidence that she violated the conditions of her probation. The State responds that the warrant contained reliable hearsay and that the court did not abuse its discretion by revoking the Defendant's probation.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980);

---

[6] Although not the subject of this appeal, on August 12, 2022, a probation violation warrant was issued after Ms. Bush alleged multiple probation violations, including absconding from supervision; using methamphetamine, amphetamine, and marijuana; failing to pay "court fines;" and failing to complete an alcohol and drug assessment as ordered by the trial court. On October 28, 2022, the trial court revoked the Defendant's probation and ordered her to serve the remainder of her sentence in confinement. Smith County Sheriff's Office records reflect that in July 2023, the Defendant was released upon "time served" in connection with this case. The record does not contain further information about this revocation proceeding.

*see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan*, 641 S.W.3d at 759.

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Id*. at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. *Id.* §§ 40-35-308(a), (c) (Supp. 2021), -310 (Supp. 2021). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 215 Tenn. 553, 387 S.W.2d 811, 814 (Tenn. 1965)).

**Admission of the Probation Violation Warrant**

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay is inadmissible unless it qualifies as an exception. *Id.* at 802. A trial court's factual findings and credibility determinations relative to a hearsay issue are binding upon an appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). The determination of whether the statement in question is hearsay and whether a hearsay exception applies are questions of law that are reviewed de novo. *Id.*

However, "the full panoply of rights due a defendant in criminal prosecutions" does not apply to probation and community corrections revocation hearings. *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993) (internal quotation marks and citation omitted). In a probation revocation hearing, "'reliable hearsay' may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted." *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994); *see* T.C.A. § 40-35-209(b) (2019). A "probation report . . . is precisely the reliable hearsay contemplated under" Tennessee Code Annotated section 40-35-209(b). *Id*. Although hearsay evidence is generally admissible in a revocation hearing, a defendant's confrontation right precludes the admission of hearsay evidence unless the hearsay evidence is reliable. *Wade*, 863 S.W.2d at 408*.* In order for hearsay evidence to be deemed reliable, a trial court must find that "good cause" exists to justify the denial of the right to confront witnesses and that the hearsay evidence is reliable. *Id.* at 409.

The trial court determined that the probation violation warrant affidavit contained reliable hearsay and was, therefore, admissible evidence at the revocation proceeding. Although evidence concerning practices and policies in unrelated revocation proceedings was presented at the Defendant's hearing, the affidavit in this case was typed, the affiant's signature was notarized, and the trial court judge presiding over the revocation proceeding signed it. The warrant was, likewise, filed with the trial court clerk. The court noted that its usual practice was to review a probation revocation warrant while the probation officer was present and that if the warrant failed to meet the necessary criteria, it was returned to the probation officer without the judge's signature. The record does not contain evidence showing, or even suggesting, that the judge deviated from his usual practice. Further, testimony from Ms. Bush related to the Defendant's continued failure to report to the probation office and from Ms. Dias related to the Defendant's continued failure to pay fines, costs, and fees was corroborative evidence of the statements contained in the affidavit. The record does not preponderate against the trial court's finding that the warrant contained reliable hearsay.

However, the record also reflects that the Defendant asserted her confrontation rights and argued that she had the right to cross-examine Ms. Meness, the affiant of the probation violation warrant. *See id.* at 409. The trial court interjected and inquired about whether Ms. Meness were available and if anyone had attempted to subpoena Ms. Meness. The prosecutor did not comment on Ms. Meness's availability. Defense counsel said that the State had never presented Ms. Meness as a witness until counsel "subpoenaed her last time." We glean from the record that counsel referred to an unrelated probation revocation case in which the defense subpoenaed Ms. Meness to testify. Counsel told the court that she had attempted to subpoena Ms. Meness in this case, that it "didn't get served," and that Ms. Meness "never comes to any of these hearings."

Although the trial court and defense counsel discussed Ms. Meness's availability, the court did not render a finding that "good cause" existed to justify the denial of the Defendant's right to confront witnesses. *See id*. at 409 (In order for hearsay evidence to be deemed reliable, a trial court *must find* (1) that "good cause" exists to justify the denial of the right to confront witnesses and (2) that the hearsay evidence is reliable.) (emphasis added). Although we acknowledge that the trial court found that the testimony from Ms. Bush and Ms. Dias was corroborative of the statements in the probation violation warrant affidavit, which was relevant to whether the warrant contained reliable hearsay and arguably relevant to a good cause finding, the court did not satisfy its obligation to make the requisite finding regarding the Defendant's confrontation rights. As a result, we remand this case to the court for further proceedings at which the court shall make a finding of fact as to whether good cause exists to justify the denial of the right to confront and cross-examine Ms. Meness. *See State v. Sherman Lee Harris*, No. W2021-00229-CCA-R3-CD, 2022 WL 5228888 (Tenn. Crim. App. Feb. 2, 2022) (remanding to the trial court when it failed to make a good cause finding pursuant to *Wade*), *no perm. app. filed*.

Because we have concluded that a critical finding of fact regarding the Defendant's confrontation rights is required to facilitate appellate review and because the court's finding of fact could alter the propriety of the court's probation revocation determinations, we decline, at this juncture, to consider the merits of the court's decision to revoke and extend the Defendant's probation.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion. Upon further review, we have determined that the record does not contain judgment forms for indictment Counts 2, 3, 4, and 7. *See State v. Berry*, 503 S.W.3d 360 (Tenn. 2015); Tenn. R. Crim. P. 32(e)(3). Therefore, we, likewise, remand the case to the trial court for the entry of judgment forms reflecting that Counts 2, 3, 4, and 7 were dismissed if judgments forms were not entered previously by the trial court. Additionally, the judgment form in Count 6 reflects a clerical error in that it states the sentence is to be

served consecutively to the sentence in Count 1, which was dismissed based upon the plea agreement and upon the judgment form contained in the record.  As a result, we remand the case to the trial court for the entry of a corrected judgment in Count 6, possession of marijuana, to reflect consecutive service with the sentence in Count 5, possession of drug paraphernalia.


**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE

- 13 -