IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 16, 2013 Session

**STATE OF TENNESSEE v. JOSHUA D. JONES**

**Appeal from the Circuit Court for Dickson County**
**No. 22CC2012CR125,350    George C. Sexton, Judge**

_____

**No. M2012-02731-CCA-R3-CD - Filed September 24, 2013**

_____

The Defendant-Appellant, Joshua D. Jones, appeals from the Dickson County Circuit Court's order revoking his probation. The Appellant previously entered a guilty plea to initiation of a process intended to result in the manufacture of methamphetamine in violation of Tennessee Code Annotated section 39-17-435 and was sentenced to six years in the Department of Correction. The sentence was suspended, and the Appellant was placed on Community Corrections and then transferred to the drug court program. The Appellant was terminated from the drug court program, and the trial court subsequently revoked the Appellant's probation and ordered that he serve his original six-year sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and ROGER A. PAGE, JJ., joined.

Leonard G. Belmares, II, for the Defendant-Appellant,

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Dan M. Alsobrooks,  District Attorney General; and Carey J. Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On August 22, 2012, the Appellant entered a guilty plea to initiation of a process intended to result in the manufacture of methamphetamine in violation of Tennessee Code Annotated section 39-17-435, for which the Appellant received a sentence of six years in the Department of Correction. The Appellant's sentence was suspended, and he was placed on Community Corrections, with an option to transfer into the 23rd Judicial District Drug Court

program if accepted. On August 31, 2012, the Appellant entered a plea of nolo contendre to vandalism and was sentenced to 11 months and 29 days in the drug court program. On September 20, 2012, the Appellant was transferred to the drug court program for his methamphetamine sentence.

On October 16, 2012, the Honorable Robert Burch entered an order terminating the Appellant from the drug court program for "threatening the House Manager of the Drug Court Sober Living Residence." On October 19, 2012, a probation violation report issued, alleging that the Appellant violated the terms of his probation by being terminated from the drug court program.

On November 28, 2012, a probation revocation hearing was held. Mr. Glen Parker, the Appellant's probation officer, testified that the Appellant was terminated from the drug court program due to an altercation at the drug court residence. He stated that he was informed of the altercation by Doug Beechum, a drug court coordinator.

Mr. Doug Beechum, the coordinator of the 23rd Judicial District Drug Court Program, testified that the Appellant was terminated from the drug court program because "[the Appellant] and our house manager Timothy Bramlett was [sic] in an altercation about what – some rules in the house and [the Appellant] threatened [Mr. Bramlett]." At this point, defense counsel objected to the testimony of Mr. Beechum as hearsay. The court overruled the objection, reasoning, "It's reliable hearsay of a co-worker." Defense counsel persisted in his objection, stating "It may be reliable, Judge, but there's no reason – there's no good reason . . . the DA could call the witness who does have personal knowledge and was present at the alleged altercation." The court noted the objection and overruled it.

Mr. Beechum also testified that although he did not personally witness the altercation, he viewed the altercation on a video recording system. He stated that the video had no sound, but that he was able to observe the "body actions of what was going on." He testified that "[he] could see body language . . . and there [were] some physical threats offered during that – the house manager called me immediately afterwards and told me that he was – he was threatened by [the Appellant]." He explained that the program is "100 percent nonviolent" and that the program has "zero tolerance to violence." He further stated that all program participants are informed of the nonviolence policy and that it is included in the program handbook and house rules.

On cross-examination, Mr. Beechum stated that the Appellant threatened Mr. Bramlett by telling him "that [the Appellant] was going to kick [Mr. Bramlett's] ass for . . . telling on him for something he did in the house . . . he said that was snitching." Mr. Beechum conceded that he did not know the exact rule violation underlying the altercation. He also

stated that he could not read the lips of the Appellant or Mr. Bramlett on the video and did not hear any of the alleged threats that were made.

The Appellant testified in his defense. He stated that an altercation arose after one of the residents informed Mr. Bramlett that some change had gone missing. The Appellant stated that Mr. Bramlett told him that the house would have to have a meeting to determine what happened. He described the rest of the altercation as follows:

> I said no, dog, we ain't going to do that today – you know what I'm saying, just playing around . . . [Mr. Bramlett] said, well, you ain't going to tell me what to do, you know what I'm saying. I said, well, look here, I was just f'g joking around, don't get f'g smart with me, you know what I'm saying . . . we had words back and forth, you know what I'm saying, but it was no threats . . . I can't remember exactly what was said 'cause I was mad or whatever, but I never told him that I would whoop him.

The Appellant was asked whether he made any threats, to which the Appellant replied, "No, this – [Mr. Bramlett] might've took [sic] this as a threat 'cause I told him, I said, look, if you call Doug and Chad and tell them what's going on, I said make sure you tell both sides of the story." He reiterated that he was "just joking around" and never made any threats towards anyone in the drug court residence.

On cross-examination, the Appellant conceded that he understood the rules of the drug court program going in, and was aware of the policy regarding nonviolence.

Following the hearing, the trial court found that the Appellant violated the terms of his probation. The court specifically found "by a preponderance of the evidence, even based upon the [Appellant]'s own testimony, that there was a violation of the rules, [and] he was terminated from drug court." Based on these findings, the court entered an order revoking the Appellant's probation and ordering the Appellant to serve the balance of his sentence.

On December 13, 2012, the Appellant filed a timely notice of appeal.

**ANALYSIS**

On appeal, the Appellant argues that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his original six-year sentence in confinement. Specifically, the Appellant asserts that the trial court improperly admitted the hearsay testimony of Mr. Doug Beechum and violated his constitutional right to confrontation. The Appellant maintains that without the hearsay testimony of Mr. Beechum,

there was insufficient evidence to determine that the Appellant violated the terms of his probation. In response, the State agrees that the hearsay testimony of Mr. Beechum was improperly admitted by the trial court. The State asserts, however, that the other evidence presented at the hearing was sufficient to justify the trial court's revocation. Following our review, we agree with the State.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." T.C.A. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this Court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, the defendant must show "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308, -310, -311 (2012).

In Gagnon v. Scarpelli, the United States Supreme Court set out the "minimum requirements of due process" that must be afforded to appellants in a probation revocation hearing, which includes the "right to confront and cross-examine adverse witnesses (unless the hearing officer *specifically finds good cause for not allowing confrontation*)." 411 U.S. 778,786 (1973) (quoting Morrisey v. Brewer, 408 U.S. 471, 489 (1972) (emphasis added)). Thus, as noted by the Tennessee Supreme Court, this confrontation right "is not absolute and may be relaxed" in a probation revocation hearing upon a showing of good cause. State v. Wade, 863 S.W.2d 406, 407 (Tenn. 1993). However, even where good cause exists to deny the appellant his confrontation rights, "due process requires proof that the [evidence] is reliable." Wade, 864 S.W.2d at 408. This Court explained that:

> [H]earsay evidence is admissible at a probation revocation hearing, thus depriving the probationer of the right to cross-examination, when minimum

confrontation requirements of <u>Gagnon</u> are met . . . . Those include (1) a specific finding by the trial court of "good cause" that would justify the denial of the defendant's right to confront and cross-examine an adverse witness; and (2) a showing that the information contained in the [hearsay testimony] is reliable.

<u>State v. Joyce Newman</u>, No. M1999-00161-CCA-R3-CD, 2000 WL 994358, at *4 (Tenn. Crim. App. July 12, 2000) (citing <u>Wade</u>, 863 S.W.2d at 409) (internal citations omitted)).

Here, the Appellant and the State are in agreement that the trial court improperly admitted hearsay evidence at the probation revocation hearing. Specifically, the Defendant complains, and the State concedes, that the trial court made an erroneous determination that the hearsay testimony of Mr. Beechum was reliable and failed to make any finding of good cause to justify the denial of the Appellant's confrontation rights. Our review of the record leads us to the same conclusion. In overruling defense counsel's objection, the trial court simply reasoned that the testimony was "reliable hearsay of a co-worker." The court did not make any specific finding of good cause to justify the denial of the defendant's right to confront and cross-examine the adverse hearsay declarant, Mr. Bramlett, <u>see</u> <u>Wade</u>, 863 S.W.2d at 409, and the State offered no explanation as to why Mr. Bramlett, the victim of the alleged threats, was not presented as a witness. Moreover, the State did not present any proof indicating the reliability of the testimony, and we can find nothing in the record to support the court's conclusion that the testimony was reliable. As such, we conclude that the trial court erred in admitting the testimony at the hearing over the objections of the Appellant.

Notwithstanding our conclusion that the admission of the hearsay testimony of Mr. Beechum was error, we conclude that the error was harmless beyond a reasonable doubt. <u>See</u> Tenn. R. Crim. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). "It is well-established that a conviction need not be reversed due to an error of constitutional dimensions as long as the State demonstrates 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" <u>State v. Samuel A. Gribbins</u>, No. M2005-01992-CCA-R3-CD, 2006 WL 1916811, at *6 (Tenn. Crim. App. June 14, 2006) (citing and quoting <u>Chapman v. California</u>, 386 U.S. 18, 34 (1967); <u>State v. Vaughan</u>, 144 S.W.3d 391, 409 (Tenn. Crim. App. 2003)).

In this case, the evidence offered at the probation revocation hearing, absent the hearsay testimony of Mr. Beechum, is sufficient to establish by a preponderance of the evidence that the Appellant violated the terms of his probation. As the trial court noted, the

Appellant's own testimony establishes that he violated the rules of the drug court program and was terminated. The drug court program has a "zero tolerance" policy for violence, which is included in the program handbook and house rules. The Appellant stated that he and Mr. Bramlett had "words back and forth." He explained that he could not remember exactly what was said because he was angry, but he denied making any threats. He conceded that Mr. Bramlett "might've took [sic] this as a threat" but insisted he was joking around. In addition, Mr. Beechum testified that he observed the altercation between the Appellant and Mr. Bramlett over the video recording system. Although he did not hear the words exchanged, he witnessed the body language and stated that the Appellant made "physical threats" towards Mr. Bramlett. Based on this testimony, we conclude that the outcome would not have been different had the hearsay evidence been excluded. See Gribbins, 2006 WL 1916811, at *6; State v. Stephen E. Cline, No. M2000-01674-CCA-R3-CD, 2001 WL 1379877, at *4 (Tenn. Crim. App. Oct. 30, 2001) (both concluding that the trial courts' error in denying the defendants' confrontation rights was harmless in light of other evidence presented at the revocation hearing that supported revocation). There was sufficient evidence, aside from the hearsay testimony, that the Appellant violated the terms of his probation by violating the rules of the drug court program. Consequently, we conclude that the trial court did not abuse its discretion in revoking the Appellant's probation and ordering him to serve the balance of his sentence in the Department of Correction.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE