# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 11, 2013 Session

## STATE OF TENNESSEE v. LEONARD GILES, JR.

**Appeal from the Circuit Court for Williamson County**
**No. I-CR075059     Michael W. Binkley, Judge**

---

**No. M2013-01037-CCA-R3-CD - Filed March 24, 2014**

---

The Defendant-Appellant, Leonard Giles, Jr., appeals the Williamson County Circuit Court's revocation of his probation. On appeal, Giles argues (1) the special condition of his probation prohibiting him from driving or possessing a vehicle is invalid; (2) the trial court erred in failing to consider the invalidity of this special condition during his revocation hearing; (3) the admission of witness statements at the revocation hearing violated his right of confrontation; and (4) the cumulative effect of the aforementioned errors deprived him of his right to a fair trial. Upon review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Benjamin C. Signer, for the Defendant-Appellant, Leonard Giles, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Mary Katherine White, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Factual Background.** On April 1, 2011, Giles entered a guilty plea to the delivery of dihydrocodeinone in violation of Tennessee Code Annotated section 39-17-417. On April 26, 2011, the trial court sentenced Giles to a three-year sentence, suspended after service of nine months in confinement. The trial court's judgment contained the following special condition: "[Defendant] cannot drive a motor vehicle or have a vehicle on his property within his control[.]"

On December 20, 2011, a probation violation warrant was issued against Giles alleging that he "operated a motor vehicle in violation of his court-ordered Special Conditions" on that date. On January 18, 2012, a second probation violation warrant was issued against Giles alleging that he "operated a motor vehicle in violation of his court-ordered Special Conditions" on December 21, 2011. On February 14, 2012, a third probation violation warrant was issued against Giles alleging that on February 7, 2012, he "operated a motor vehicle in violation of his court-ordered Special Conditions" and that on February 14, 2012, he "admitted in open court that he recently had made a threatening statement against his attorney."

On April 9, 2012, Giles's attorney filed a "Motion to Dismiss and Revisit the Condition of Probation Prohibiting Driving or Owning a Motor Vehicle." On April 23, 2012, the trial court revoked his probation after Giles admitted to the violations and reached an agreement with the State to reinstate his probation according to its original terms "to [three years] from today to [April 22, 2015]."

On December 18, 2012, a probation violation warrant was issued against Giles alleging that on November 17, 2012, he had been cited for an improper tag on his vehicle and no proof of insurance; that on November 27, 2012, he was cited for an accident resulting in damage to another vehicle; that he failed to report these citations to his probation officer; and that on November 17, 2012, and November 27, 2012, he violated the special condition of his probation that prohibited him from driving a vehicle or having a vehicle on his property within his control. On March 18, 2013, Giles, through new counsel, filed a "Motion to Alter Conditions of Probation," wherein the defense sought to remove the "probation condition that he not drive or possess a motor vehicle."

**Revocation Hearing.** At the March 26, 2013 probation revocation hearing, Giles's presentence investigation report, two statements from witnesses, and copies of Giles's citations were admitted. The State noted that this was at least Giles's third violation for failing to abide by the special condition precluding him from driving a motor vehicle. It explained that this special condition had been imposed by a different trial judge after a full sentencing hearing. The State noted that in April 2012, a different attorney had filed a motion to have that special condition removed, and that motion was denied. It also asserted that on April 23, 2012, Giles's probation was revoked and reinstated according to the original conditions of his probation. The State argued that despite this, Giles "has still continued to drive, and therefore, . . . [we] would submit that [he] should be ordered to serve his sentence [in confinement] due to the flagrancy of the[se] violations[.]" Defense counsel responded that because Giles's citations had been dismissed, Giles's probation should not be revoked on that basis. However, he conceded that Giles should have reported these citations to his

probation officer, even though they were later dismissed. Defense counsel also argued that the special condition prohibiting Giles from driving was invalid.

Christopher Cook, the Chapel Hill Chief of Police, testified that he knew Giles because he investigated him for leaving the scene of an accident on November 12, 2012 and because he wrote him a citation for a traffic stop on November 17, 2012. He stated that the police department became aware of the November 12, 2012 incident when a man notified police that his mother's car had been hit while parked in the parking lot of the Dollar General Store in Chapel Hill. Chief Cook went to the store and talked with two witnesses, Julie Sanborne and Betty Fraizer. He said that Fraizer told him that Giles had just been in the store and had been driving a vehicle matching the description of the white truck that Sanborne saw striking the woman's car. Fraizer's and Sanborne's written statements were entered into evidence over the defense's objection.

Chief Cook stated that after obtaining the statements from Fraizer and Sanborne, he continued his investigation and later obtained the following statement from Giles after signing a waiver of rights form: "On 11-12-12 I was at the dollar store[.] I went and got Aspirin and left[.] I didn't hit any other automobile[.]" After obtaining these statements, Chief Cook took out warrants against Giles for leaving the scene of an accident resulting in damage and for failing to give immediate notice of an accident. He later discovered that these citations were dismissed after Giles made a twenty dollar donation to the equipment fund for the Chapel Hill Police Department.

Chief Cook stated that on November 12, 2012, he independently verified that Giles had a white truck matching the description of the vehicle Sanborne had seen hit the woman's car. After obtaining the witnesses' statements, Chief Cook went to Giles's residence and noticed that a white truck with a gold stripe that had damage to the front end was parked outside the house. He wrote down the vehicle's tag number, and when he checked this tag against the department's database for registrations, the database showed that the tag was for a different vehicle belonging to a different owner.

On November 17, 2012, Chief Cook saw Giles driving the white truck on a highway within the city limits of Chapel Hill. He stopped Giles and issued him a citation for improper tags and for failing to have proof of insurance. He stated that "[t]o the best of [his] understanding," this citation was later dismissed.

Taz Farmer, Giles's probation officer, testified that Giles knew about the special condition of his probation prohibiting him from driving a vehicle or having a vehicle on his property and that they had talked about this condition on several different occasions. He explained why the sentencing court had originally imposed this special condition:

To my knowledge, the reason for that was . . . Giles had a former vehicular homicide case[.]

. . . .

[S]o it was my understanding that as that was brought out in the sentencing hearing that the Court was very concerned about him driving and especially because his charge being a drug charge and that [vehicular homicide conviction] having been in his past, that was put on him as a . . . special condition to his probation out of the concern for the safety of the community.

Farmer stated that he had taken out four warrants against Giles for violating the special condition of his probation, including the one at issue in this case. He stated that on April 23, 2012, Giles admitted that he had violated his special condition and agreed to abide by the original conditions of his probation when he was reinstated to a new three-year probationary term.

At the conclusion of the revocation hearing, the trial court noted that the special condition prohibiting Giles from driving was troubling but was not his concern:

[H]onestly, before I get into the findings, I have a real problem with making a condition of probation [not] driving an automobile for an offense that occurred 20 years ago. I've got a real problem with that, but, nonetheless, if I have a problem with that, that really is not my concern at this level. My concern as a trier of fact and as a judge in this case is to look at the evidence in front of me, and even though that bothers me and it really does because, you know, we're in [a] rural area, and, you know, I didn't hear any proof from the defendant about why he would need to be driving, but it just—it bothers me, but you know what, so what. That's not my role as a judge and that's sometimes hard to separate to be frank with you, but it's not my role to be an advocate or to think, well, why didn't that happen or why did it happen or why didn't someone come in and do this before, they did, but it still bothers me but, nonetheless, I am obligated and bound to follow the rules of other judges. I am bound to follow the rules of law whether I like them or not. . . .

The court also stated that it was going to follow the previous order denying Giles's request to remove the special condition because no new evidence required a modification of that condition:

As a judge, again, regardless of my feelings of why in the world that was made a condition to probation, fact of the matter remains [that] someone tried before this hearing today to get that modified and that was [denied]. Court didn't think that that was a smart and wise thing to do, and the question becomes am I bound by that with the facts up to that day as the rule of the case and I think I am. I think I am, and I think I, as a judge, am required to follow that order and there were no new facts that were presented to justify me considering the modification of that particular condition from the date of the last order on denying that modification until today, so I didn't hear any new evidence.

At the conclusion of the revocation hearing, the trial court found that Giles had violated the terms of his probation by failing to obey the laws of the United States, or the State of Tennessee, or a municipal ordinance, by failing to report his citations to his probation officer, and by failing to abide by the special condition of his probation precluding him from driving an automobile or having an automobile within his control on his property. Regarding the appropriate sentence, the court stated:

I just can't justify putting this man back on probation. I just can't do it as much as I hate it. I really hate it, but, [y]ou know, what I hate and what I need to do as a judge [are] two different things. This is the fourth time this man has violated under this particular case and first one was back on [12]/20, the second one, 1/18, the third, 2/14, and then today's violations. You know, I just can't in good conscience allow the man to get another chance because I don't think he's paying attention[.]

In light of these violations, the trial court revoked Giles's probation and ordered him to serve his three-year sentence in confinement. Giles filed a timely notice of appeal.

## ANALYSIS

**I. Special Condition.** Giles argues that the special condition prohibiting him from driving or possessing a vehicle is unreasonable and invalid. Citing Tennessee Code Annotated section 40-35-303(d)(9), he argues that this special condition was not reasonably related to the purpose of his sentence because the use of a vehicle was not directly tied to his conviction for the delivery of dihydrocodeinone and was instead imposed because of his 1996 conviction for vehicular homicide by intoxication. He also claims that this special condition is not reasonably related to rehabilitating him for his drug offense. Finally, citing State v. Bouldin, 717 S.W.2d 584, 587 (Tenn. 1986), Giles argues that this special condition, which precludes him from having any vehicles in his possession, amounts to a forfeiture that has not been authorized by the legislature.

Initially, we note that a trial court is not required to relate the special condition of probation to the conviction offense. Instead, the special condition must reasonably relate to the purpose of the defendant's sentence and not be unduly restrictive. T.C.A. § 40-35-303(d)(9) (A court may require an offender to "[s]atisfy any other conditions reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter[.]"). Moreover, a trial court may "impose any terms and conditions not inconsistent with the Tennessee Sentencing Reform Act." State v. Johnson, 980 S.W.2d 410, 413 (Tenn. Crim. App. 1998) (citing State v. Huff, 760 S.W.2d 633, 639 (Tenn. Crim. App. 1988)). However, all probation conditions "must be reasonable and realistic and must not be so stringent as to be harsh, oppressive or palpably unjust." Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The trial court has discretion in determining special conditions of probation, but any abuse of discretion is subject to appellate review. Bouldin, 717 S.W.2d at 586 (citing Stiller, 516 S.W.2d at 620).

Regarding the validity of this special condition, we note that Giles never challenged this special condition of his probation when it was imposed. At the sentencing hearing for his delivery of dihydrocodeinone offense, the court properly considered Giles's extensive criminal history, which included a conviction for vehicular homicide by intoxication, a conviction for vehicular assault, two convictions for public intoxication, two convictions for assault, two convictions for shoplifting, and a conviction for theft of property. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public.). Given this extensive criminal history, which stemmed in part from alcohol and drug abuse, Giles has failed to show that the special condition prohibiting him from driving or having control of a motor vehicle was unrelated to the rehabilitative purpose of his sentence, which, as Farmer testified to, was to prevent him from injuring members of the community. See T.C.A. § 40-35-103(5) ("The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."). Moreover, we conclude that this special condition does not amount to a forfeiture because there was no requirement that Giles divest himself of any vehicle in his possession without compensation or that his motor vehicle be stored by any law enforcement agency for the duration of his probation. See Black's Law Dictionary (9th ed. 2009) (defining forfeiture as "[t]he divestiture of property without compensation"); Bouldin, 717 S.W.2d at 586-87 (holding that a special condition requiring the defendant to forfeit his car to the police department to be stored for the entirety of his two-year probationary sentence amounted to a forfeiture not authorized by statute). Accordingly, we conclude that the sentencing court did not abuse its

discretion in imposing this special condition. Moreover, because we have upheld the trial court's revocation of Giles's probation and imposition of a sentence of three years in confinement, this issue is moot.

**II. Failure to Consider Alleged Invalidity of Special Condition.** Giles argues that the trial court erred in failing to consider the invalidity of his special condition as a defense during his probation revocation hearing. He asserts that the trial court retains jurisdiction of a defendant's sentence until the defendant is transferred to the Tennessee Department of Correction. See T.C.A. § 40-35-212(c). He also argues that a trial court can modify or remove a condition of the defendant's probation upon its own motion or upon the motion by the defendant, a probation officer, or the district attorney. See id. § 40-35-308(a). Finally, Giles argues that the trial court gave too much weight to the prior trial court's ruling declining to remove the special condition.

We have already concluded that the sentencing court did not abuse its discretion in imposing the special condition in this case. Therefore, the trial court did not err in failing to consider it as a defense at Giles's most recent revocation hearing. While we acknowledge that the trial court may remove a condition of probation upon the motion of a defendant, see id. § 40-35-308(a)(2), we conclude that the trial court in this case did not abuse its discretion in declining to remove this special condition of probation. The record shows that Giles never challenged or objected to the special condition at the time of sentencing and never appealed his sentence. He challenged the special condition for the first time on April 9, 2012, more than a year after he was sentenced, when he filed his "Motion to Dismiss and Revisit the Condition of Probation Prohibiting Driving or Owning a Motor Vehicle" after being served with probation violation warrants alleging that he violated the special condition by driving a motor vehicle on three different occasions. On April 23, 2012, the trial court revoked Giles probation after he admitted to the violation and reached an agreement with the State to reinstate his probation according to its original terms. In this case, Giles did not file his "Motion to Alter Conditions of Probation" until after he was served with a probation violation warrant alleging in part that he had again driven in violation of his special condition of probation. At the revocation hearing in this case, the trial court recognized the prior court's ruling declining to remove the special condition and noted that Giles had presented no new evidence establishing why the special condition was so burdensome that it should be removed at this time. Accordingly, Giles is not entitled to relief on this issue.

**III. Admission of Witnesses' Statements.** Giles argues that his constitutional right of confrontation was violated when the trial court admitted the statements of two witnesses who did not testify at trial. Although he acknowledges that the rules regarding hearsay are relaxed at probation revocation hearings, he contends that the trial court failed to make the

required findings pursuant to <u>Wade</u> before admitting the statements at his probation revocation hearing. <u>See</u> <u>State v. Wade</u>, 863 S.W.2d 406, 409 (Tenn. 1993).

The Tennessee Supreme Court has noted that "the full panoply of rights due a defendant in criminal prosecutions" do not apply to probation revocations. <u>Wade</u>, 863 S.W.2d at 408 (internal quotation marks and citation omitted). However, the confrontation rights of a defendant, though relaxed at a probation revocation hearing, preclude the admission of hearsay evidence unless: (1) the trial court makes a finding that there is "good cause" to justify the denial of the defendant's right to confront and cross-examine adverse witnesses, and (2) there is a showing that information contained in the evidence is reliable. <u>Id.</u> at 409.

At the probation revocation hearing, Chief Cook testified that he investigated an accident where Giles was believed to have hit another car with his truck in a parking lot. During his investigation, Chief Cook took statements from Sanborne, who saw a white truck hit the victim's car in the parking lot of the Dollar General Store, and Fraizer, who stated that Giles had just been in the store and was driving a white truck that day. The defense objected to Chief Cook's testifying about what Sanborne and Fraizer told him. After obtaining the statements from Sanborne and Fraizer, Chief Cook went to Giles's home and saw a white truck on Giles's property, which violated his special condition of probation. He ran a check on the truck's tag and discovered that the tags were for a different vehicle belonging to a different owner. Chief Cook later observed Giles driving the white truck and wrote Giles a citation for driving with improper tags and for failing to have proof of insurance.

When the State asked to admit the written statements by Fraizer and Sanborne, the defense objected on the basis that these statements violated Giles's right to confrontation because they were made in anticipation of prosecution and because Giles was unable to cross-examine either of these witnesses. The State responded that reliable hearsay may be admitted in probation revocation hearings and that it had subpoenaed Sanborne and Fraizer to testify, but these witnesses failed to appear at the revocation hearing. It argued that these statements were relevant to whether Giles was driving a car in violation of the special condition of his probation and whether he left the scene of the accident after hitting another car in the parking lot of the Dollar General Store. After hearing counsel's arguments, the trial court made the following ruling: "I think reliable hearsay is relevant. I understand your confrontation argument. I do think, however, that the [statements] themselves are reliable hearsay for the purposes of consideration in a probation revocation hearing."

Clearly, the written statements given by Sanborne and Fraizer were hearsay. <u>See</u> Tenn. R. Evid. 801(c). We agree that the trial court failed to make the finding of "good cause" to justify the admission of the witnesses' statements without having these witnesses

testify at the revocation hearing. We also agree that the court failed to make a showing that the information contained in these statements was reliable. Absent these findings, the trial court should not have admitted these statements over the defendant's objection. See State v. David James Wiley, No. E2004-01463-CCA-R3-CD, 2005 WL 1130222, at *3 (Tenn. Crim. App. May 13, 2005); State v. Brandon Scott Watson, No. M2003-01814-CCA-R3-CD, 2004 WL 1562553, at *3 (Tenn. Crim. App. July 13, 2004); State v. Joyce Newman, No. M1999-00161-CCA-R3-CD, 2000 WL 994358, at *5 (Tenn. Crim. App. July 12, 2000).

However, we conclude that the admission of these statements was harmless beyond a reasonable doubt. See Tenn R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). It has long been recognized that a constitutional error need not require the reversal of a conviction as long as the State shows "beyond a reasonable doubt that the error complained of did not contributed to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967); State v. Vaughan, 144 S.W.3d 391, 409 (Tenn. Crim. App. 2003). Even without the witnesses' statements, there is sufficient proof to establish by a preponderance of the evidence that Giles violated the terms of his probation. Giles admitted at the revocation hearing that he had violated his probation by failing to report all of his citations to his probation officer. Moreover, the evidence at the hearing established that Chief Cook observed Giles driving a motor vehicle in violation of the special condition of his probation and wrote him citations for improper tags, failing to have proof of insurance, leaving the scene of an accident resulting in damage, and failing to give immediate notice of an accident. Accordingly, we conclude that Giles's probation would have been revoked, even if the hearsay evidence had not been admitted. See State v. Samuel A. Gribbins, No. M2005-01992-CCA-R3-CD, 2006 WL 1916811, at *6 (Tenn. Crim. App. June 14, 2006); Brandon Scott Watson, 2004 WL 1562553, at *4; State v. Stephen E. Cline, No. M2000-01674-CCA-R3-CD, 2001 WL 1379877, at *4 (Tenn. Crim. App. Oct. 30, 2001). Moreover, we conclude that the trial court did not abuse its discretion in revoking Giles's probation and ordering him to serve his three-year sentence in confinement. See State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (reiterating that probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion); State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (stating that once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years). Once the trial court determined that Giles violated the terms of his probation, it was authorized to order him to serve his three-year sentence in confinement. Therefore, Giles is not entitled to relief on this issue.

**IV. Cumulative Error.** Finally, Giles argues that the cumulative errors committed by the trial court deprived him of the right to a fair trial. He contends that because half of his violations were based on the wrongfully admitted statements of Fraizer and Sanborne and the allegedly invalid special condition precluding him from driving or possessing a vehicle, these errors more probably than not affected the trial court's judgment. Because we have already determined that Giles is not entitled to relief on any of his issues on appeal, we need not consider the cumulative effect of the alleged errors. State v. Hester, 324 S.W.3d 1, 77 (Tenn. 2010) ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings.").

## CONCLUSION

Upon review, we conclude that the trial court erred in admitting the witnesses' statements. However, because this error is harmless, we conclude that the trial court did not abuse its discretion in revoking Giles' probation and in ordering him to serve his three-year sentence in confinement. The trial court's judgment is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE