IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 22, 2025 Session

## STATE OF TENNESSEE v. DANIEL JOE OTTEN II

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2020-CR-996    Robert Bateman, Judge**

_____

## No. M2024-00128-CCA-R3-CD

_____

Defendant, Daniel Joe Otten II, appeals from the trial court's revocation of his community corrections sentence and order to serve the remainder of his five-year sentence in confinement.  Defendant argues that he was denied the right to confront witnesses at the violation hearing and that the trial court improperly based its finding on hearsay evidence without a showing of reliability; that the evidence was insufficient to support the trial court's finding that Defendant violated the conditions of his release and the trial court applied an incorrect standard by failing to distinguish between failure to report and absconsion; and that the trial court erred by ordering full revocation.  After review, we conclude that the trial court erred by admitting hearsay testimony without a finding of good cause or reliability.  Accordingly, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

William W. Gill (on appeal), Assistant Public Defender—Appellate Division of the Tennessee District Public Defender's Conference; Shelby Silvey (at revocation hearing), Clarksville, Tennessee, for the appellant, Daniel Joe Otten, II.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Robert J. Nash, District Attorney General; and Hailey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 20, 2020, Defendant pleaded guilty as a Range III persistent offender to one count of felony escape and received an agreed upon sentence of five years to be served on community corrections.[1]  On June 30, 2021, an absconder violation warrant was filed alleging that Defendant tested positive for cocaine on April 6, 2021, and that Defendant had "failed to report" since May 10, 2021.  An amended warrant was filed August 25, 2023, alleging that Defendant had been arrested and charged with domestic assault on August 21, 2023.

A violation hearing was held on January 4, 2024.  Kodey Driskell, a case officer with Montgomery County Community Corrections, testified as the "keeper of the records."  Defendant's case officer, Anita Raveling, was not present at the hearing due to "ongoing medical concerns."  On direct examination by the State, Officer Driskell stated he had reviewed Defendant's case file, which showed that Officer Raveling had been in contact with Defendant by email in April 2021, when Defendant "mentioned to her he was looking into going to Buffalo Valley for drug treatment."  Defendant last reported on May 10, 2021.  Officer Raveling contacted Buffalo Valley and was told there was no record of Defendant's having attended their program.

After being challenged on cross-examination regarding his review of Defendant's case file, Officer Driskell admitted that he was familiar with the case file and that he "had reviewed it."  He admitted he did not have the "complete file" with him as it was "back at the office."  He stated that "these are just notes I was provided based on what Ms. Raveling thought would be necessary."

Based upon those notes, Officer Driskell testified that the drug screen that was the basis of Defendant's violation warrant was performed in Davidson County in response to a "transfer request" by Montgomery County to "transfer [Defendant's] supervision."  Officer Driskell said, "They drug-screened him, based on that drug screen, they denied him the transfer."  Officer Driskell testified that he "only ha[d] the lab report that was provided by Davidson County" and that he did not have an affidavit for the drug screen.

According to Officer Driskell's notes, Defendant's last known address was in Nashville.  Officer Driskell was not aware of any home visits to that address.  He agreed it was "possible" that Defendant had been living at that address during the period of his alleged violations.  Officer Driskell did not know how many times Defendant reported in Davidson County or whether Defendant was assigned a supervisor in Davidson County.

---

[1] The judgment form reflects that Defendant received an "out of range" sentence pursuant to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997).

Officer Driskell testified that Defendant reported to the Montgomery County office "his final time" on May 10, 2021. Officer Driskell testified that he was "not sure" what happened with Defendant's arrest in Davidson County. When presented with a printout from the Davidson County Criminal Court Clerk's website, Officer Driskell acknowledged that the domestic assault charge against Defendant was dismissed.

After hearing the arguments of counsel, the trial court made its findings and conclusions. The court did not consider Defendant's arrest for domestic assault, the basis for the amended violation warrant, because the charge was ultimately dismissed, but the court observed, "The fact it was dismissed does not preclude the [c]ourt to consider that as to whether [Defendant] violated the terms of his supervision." The court found that the State failed to prove by a preponderance of the evidence that Defendant failed a drug screen because the State did not provide an affidavit or a certified lab test.

The trial court credited Officer Driskell's testimony and found that Defendant had not reported "since May 10th of 2021, his whereabouts are unknown and he is considered an absconder." The court found Defendant in violation of community corrections and then heard testimony regarding the consequences of Defendant's violation.

Defendant testified that if he were reinstated to community corrections, he would live with his mother in Cunningham. He testified, "She has my kids right now and needs my help." Defendant had been living in Nashville for five years prior to his arrest. He said he worked as a mason. Defendant had lost his driver's license due to "[w]recks" and "not having insurance[,]" but he "got in with" a rehabilitation program in Clarksville that would assist him with getting his driver's license.

The trial court found that "supervision has not worked for this offender." The court ordered Defendant to serve the remainder of his sentence incarcerated with credit for time served on community corrections before the issuance of the revocation warrant.

*Analysis*

Defendant appeals the trial court's decision and argues that the trial court improperly based its determination "entirely upon unreliable hearsay evidence that was admitted in violation of [Defendant]'s due process right to confront adverse witnesses"; that the State presented insufficient evidence that he failed to report or absconded; and that the trial court applied the wrong legal standard in failing to distinguish between failure to report and absconsion.

A trial court is authorized to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence.

T.C.A. § 40-35-310, -311; *see State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991) ("Given the similar nature of a community corrections sentence and a sentence of probation, . . . the same principles are applicable in deciding whether a community corrections sentence revocation was proper."). Following the revocation of a community corrections sentence, the trial court may "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4).

"[P]robation revocation is a two-step consideration on the part of the trial court." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). "The first [step] is to determine whether to revoke probation, and the second [step] is to determine the appropriate consequence upon revocation." *Id*. Each of these is a separate and distinct decision, but there is no requirement that two separate hearings be held. *Id*. at 757-8. The standard of review for a probation revocation case is "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id*. A trial court abuses its discretion "when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

Defendant first asserts that the trial court's finding that Defendant violated community corrections was based entirely on the unreliable hearsay testimony of Officer Driskell. The State argues that the trial court properly considered the absconder warrant and Defendant's case file under the business records exception to hearsay. However, as Defendant points out in his reply brief, the State did not offer the absconder warrant or Defendant's community corrections file as exhibits to the hearing. The only proof offered by the State was Officer Driskell's testimony, based upon his notes from Officer Raveling. To be clear, the record (Defendant's community corrections file), of which Officer Driskell testified to be the "keeper of," was not presented to the trial court, counsel for Defendant or made an exhibit to the violation hearing.

Certainly "strict rules of evidence do not apply at revocation hearings." *State v. Lewis*, 917 S.W.2d 251, 257 (Tenn. Crim. App. 1995). "Reliable hearsay has been held admissible in a probation revocation hearing so long as the defendant had a fair opportunity to rebut the evidence." *Id*. (citing *State v. Carney*, 752 S.W.2d 513 (Tenn. Crim. App. 1988)). In order for hearsay evidence to be deemed admissible, a trial court must find that "good cause" exists to justify the denial of the right to confront witnesses and that the hearsay evidence is reliable. *State v. Wade*, 863 S.W.2d 406, 409 (Tenn. 1993). Therefore, the confrontation rights of a defendant, although reduced at a probation revocation hearing,

nonetheless preclude the admission of hearsay evidence unless two requirements are met: 1) a finding of "good cause" that would justify the denial of the defendant's right to confront and cross-examine an adverse witness, and 2) a showing that the "evidence" established that the hearsay "was reliable." *Id*.

Defendant complains that the trial court failed to make a "specific finding . . . of 'good cause' that would justify the denial of the defendant's right to confront and cross-examine an adverse witness." After the State's direct examination of Officer Driskell, defense counsel requested to review Defendant's community corrections file "since we're testifying from the record[,]" and then made the following objection:

> Q. [Officer] Driskell, is this the complete file? Is this all that community corrections has?
>
> A. No. He has the complete file back at the office. This is just the notes I was provided based on what Ms. Raveling thought would be necessary.
>
> [Defense counsel]: Your Honor, I would object. I can't cross-examine. I have a lot of questions, which I think the answers are going to be, "I don't know," because [Officer Driskell] doesn't have personal knowledge and this is not a complete file.

The court then directed counsel to "ask your questions[,]" and counsel cross-examined Officer Driskell. The trial court made no finding of "good cause" that would justify the absence of Defendant's case manager, Officer Raveling, nor did the trial court explicitly find that Officer Driskell's testimony was reliable.

Some of our decisions conclude that "[a]lthough the trial court did not make a specific finding of 'good cause' for the admission hearsay testimony, such a finding was implicit in the trial court's words and findings." *See State v. Jackson*, No. W2022-01288-CCA-R3-CD, 2023 WL 2609643, at *4 (Tenn. Crim. App. Mar. 7, 2023), *no perm. app. filed*; *State v. Cherry*, No. W2015-01084-CCA-R3-CD, 2016 WL 520304, at *1 (Tenn. Crim. App. Nov. 3, 2015), *perm. app. denied* (Tenn. Feb. 8, 2016). Others have held that the defendant's confrontation rights were violated when the trial court admitted hearsay into evidence. *See State v. Gribbons*, M2005-01992-CCA-R3-CD, 2006 WL 1916811, at *5 (Tenn. Crim. App. June 14, 2006); *State v. Wiley*, No. E2004-01463-CCA-R3-CD, 2005 WL 1130222, at *3 (Tenn. Crim. App. May 13, 2005) (reversing a revocation of probation based on hearsay evidence deemed reliable where the trial court "made no findings concerning the unavailability of the witness, nor did the court make a specific finding of good cause for the admission of the evidence").

Here, the explanation offered for Officer Raveling's absence at the hearing was that she was experiencing "ongoing medical concerns." Based on this evidence, we conclude that good cause existed for Officer Raveling's absence. Even where there is a showing of good cause, however, due process also requires a showing of reliability. *Wade*, 863 S.W.2d at 408. Officer Driskell's testimony was not supported by any documentation. He testified from "notes" made in preparation for the revocation hearing. Officer Driskell had no independent knowledge of the information contained in Defendant's case file, which Officer Driskell testified was prepared by Officer Raveling. We cannot conclude that the State demonstrated that Officer Driskell's testimony was reliable.

Regarding Defendant's alleged violation for failure to report or absconding, the State did not introduce any evidence of Defendant's reporting history, his communications with Officer Raveling, or attempts by Officer Raveling to contact Defendant.

The trial court erred by admitting hearsay testimony without finding that it was reliable, and we cannot conclude that the trial court's omission was harmless. Without Officer Driskell's hearsay testimony, there was no other evidence presented at the revocation hearing to support a violation of Defendant's community corrections sentence. Therefore, based on the record before us, the State failed to establish that Defendant violated the conditions of his community corrections sentence.

Defendant also asserts that the trial court abused its discretion by failing to distinguish between failure to report, a "technical" violation, and absconsion, a "non-technical" violation. Defendant argues the "distinction is critical" because there are different consequences for a revocation based on a technical or non-technical violation. In 2021, the legislature created two categories of probation violations, technical and non-technical, and it assigned different consequences to each category. *See* 2021 Tenn. Pub. Acts, ch. 409, §§ 24, 25 (eff. July 1, 2021); *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing T.C.A. § 40-35-311(e)(2) (Supp. 2021)), *no perm. app. filed*.

While a trial court is limited in imposing consequences for a technical probation violation, those limitations do not apply to violations of community corrections. *State v. Milton*, No. W2023-00341-CCA-R3-CD, *perm. app. denied* (Tenn. Jan. 12, 2024). As this Court recently observed in another similar case, "[u]nder a community corrections sentence, 'a violation irrespective of its nature remains a violation.'" *State v. Murray*, No. M2024-00163-CCA-R3-CD, 2025 WL 435686 (Tenn. Crim. App. Feb. 6, 2025) (quoting

- 6 -

*State v. Griffis*, No. 03C01-9708-CR-00358, 1998 WL 712702, at \*2 (Tenn. Crim. App. Oct. 13, 1998)).[2]

Here, the "Sentencing Order/Behavioral Condition of Release" contained in the record sets forth the conditions for Defendant's community corrections sentence. It makes no distinction between "technical" versus "non-technical" violations. *See Griffis*, 1998 WL 712702, at \*2 (affirming violation where the behavioral contract setting forth the conditions of community corrections sentences makes no distinction between a "technical" violation versus a "non-technical" violation). The trial court did not abuse its discretion by failing to distinguish between a technical and non-technical violation.

### *Conclusion*

Based upon the foregoing and the record as a whole, we reverse the judgment of the trial court and dismiss Defendant's community correction violation warrant.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE

---

[2] *Murray* was also a community corrections violation matter which was heard in the same court as the instant case, on the same January 4, 2024 docket. While Officer Driskell again testified as a "keeper of the records," testifying from notes prepared for the hearing by case officer Raveling, Murray was not contesting his violation which he had admitted at an earlier hearing. *State v. Murray*, No. M2024-00163-CCA-R3-CD, 2025 WL 435686, at \*3. The hearing for Murray was a sentencing hearing only. We find this to be a significant distinction.