IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 21, 2025

**STATE OF TENNESSEE v. JOHNNY ROBERT BOWEN, JR.**

**Appeal from the Circuit Court for Bedford County**
**No. 2022-CR-19490      Forest A. Durard, Jr., Judge**

_____

**No. M2024-01745-CCA-R3-CD**

_____

The Defendant, Johnny Robert Bowen, Jr., appeals from the order of the trial court revoking his probation. The Defendant contends the admission of the drug screening report violated his confrontation rights because there was an insufficient showing of good cause or reliability. He additionally argues the trial court abused its discretion in fully revoking his probation by failing to consider any other alternative to incarceration. After review, we affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

Walter Alan Rose, Tullahoma, Tennessee, for the appellant, Johnny Robert Bowen, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 14, 2022, the Bedford County Grand Jury indicted the Defendant for home improvement services fraud in an amount of $10,000 or more but less than $60,000, financial exploitation of an elderly adult in an amount of $10,000 or more but less than $60,000, and four counts of fraudulent use of a credit card. The Defendant entered a "best interest" guilty plea to home improvement services fraud, and the remaining charges were dismissed. The Defendant received an effective sentence of eight years, which was

suspended to supervised probation on the condition that he pay $2,038.60 in restitution plus court costs.

On March 25, 2024, the Bedford County Circuit Court issued a violation of probation warrant for the Defendant, alleging that he tested positive for amphetamine, methamphetamine, fentanyl, and cocaine during a drug screen conducted for probation intake. The warrant noted that this was a zero tolerance violation.

A revocation hearing was held on October 21, 2024. Officer Rebecca Merrell, a probation officer with the Tennessee Department of Correction, testified that the Defendant violated Rule 8 of his probation which states: "I will not use intoxicants of any kind to excess or use or have in my possession illegal drugs. And I will submit to random drug screens as directed." Officer Merrell stated that the Defendant reported to the probation office on February 20, 2024, where he tested positive for amphetamine, methamphetamine, cocaine, and fentanyl. Officer Merrell then sent the Defendant's sample to Alere Toxicology Services for confirmation. The laboratory prepared a drug test report and accompanying affidavit certifying that the Defendant's sample was "handled with strict chain-of-custody documentation" and "all testing was performed according to accepted laboratory practices." From the affidavit, Officer Merrell identified the certifying analyst as Alyssa Cox, and the affiant as Will Collie. Officer Merrell testified to the contents of the drug test report, stating that the Defendant tested positive for methamphetamine with a quantitative value of 15,389 ng/ml, amphetamine with a quantitative value of 2,572 ng/ml, cocaine metabolite with a quantitative value of 156 ng/ml, and fentanyl with a quantitative value of less than 50 ng/ml. Officer Merrell confirmed that the drug test report and affidavit were "true and accurate cop[ies]" of what she received from Alere Toxicology Services. The State moved to admit the drug report and affidavit and asked "that good cause be found. . . since [Will Collie] is out of state." When the trial court asked whether there were any objections, defense counsel responded, "No objection."

Officer Merrell also testified regarding the Defendant's supervision history. Officer Merrell stated that the Defendant attended Phase I of intake at the probation office on February 7, 2024. The Defendant also complied with a home visit on February 9th. However, on February 13th and February 15th, the Defendant failed to report for Phase II of intake. On February 20th, the Defendant reported to the probation office and failed the drug screening. On March 8th, the Defendant failed to complete his Risk and Needs Assessment. Officer Merrell stated that she has not seen the Defendant since he failed to report for the risk assessment. Officer Merrell also stated that the Defendant never requested her assistance in obtaining substance abuse treatment and that she would have provided rehabilitation options had he requested it.

On cross-examination, Officer Merrell acknowledged that she had not personally met with the Defendant and explained that new probationers first meet with the intake team rather than their assigned officers. When asked if the reason the Defendant never asked her about rehabilitation is because she never met with him personally, Officer Merrell responded, "He could have asked intake."

The Defendant testified on his own behalf. He stated that his addiction began with prescription drugs and eventually led to the use of heroin and fentanyl. He admitted that he was "an active fentanyl user" when he began his probation. The Defendant said that, prior to the February drug screening, he "knew [he] was going to be dirty so [he] did not want to take the test." The Defendant asserted that he told his probation officer, Erin Coffelt, that he was going to fail the drug test, and she responded, "[I]f you test positive[,] the State will give you help." He complied with the drug screening and was not told the results until he was served with a warrant on June 18th for failing the drug test.

The Defendant stated that he had been accepted into a twelve-month rehabilitation program at Evolve Behavioral Health and was "asking the court to allow [him] to go to rehab." A letter confirming the Defendant's admission into the Evolve Behavioral Health treatment program was admitted into evidence. The Defendant said he wanted treatment because he was "tired of being a drug addict" and wanted "to better [him]self and earn a living of sobriety."

On cross-examination, the Defendant denied using cocaine or methamphetamine, but claimed those substances "must have been in the fentanyl." When asked why he was "all of a sudden" asking for substance abuse treatment after twenty years of addiction, the Defendant responded, "I have never been offered rehab. I never was told rehab was an option, but I'm tired of it. I want to be a better person. I don't want to get high no more." The Defendant maintained that he had reached out to Officer Coffelt "a couple times" regarding substance abuse treatment and was told that "the State would allow [him] rehab." When the State asked the Defendant if he had sought substance abuse treatment from the time he failed his drug test in February to the day he was arrested in June, the Defendant stated that he did not because he was "still bad on [his] addiction." The Defendant said that during those four months, he was working as a landscaper and was able to maintain working despite his fentanyl use.

The trial court found that the Defendant violated the terms of his probation and stated its reasoning as follows:

Well clearly the [D]efendant violated his terms of his probation. I believe the warrant only complained about or alleged that he failed his drug screen but he actually had more infractions in there than that. Failure to report since

- 3 -

June -- excuse me, like March 18th and then he got picked up in June. He claims he was working during that period of time. Of course[,] I can only -- my ruling is limited to the allegations in the warrant, that does not mean I can't take the other [infractions into] consideration during the dispositional phase.

The trial court then heard arguments regarding the appropriate disposition. The State introduced multiple certified copies of prior guilty pleas and probation violation warrants as exhibits to establish that the Defendant previously had been given opportunities for probation or community corrections but had violated the terms and conditions each time. A judgment was entered showing that in December 2016, the Defendant was convicted of driving under the influence and reckless endangerment and placed on probation. A probation violation warrant was admitted into evidence alleging that the Defendant violated his probation in relation to these cases by failing to report as instructed. A petition for acceptance of plea of guilty by the defendant and waiver of rights form was admitted into evidence noting that the Defendant entered a guilty plea to three counts of passing worthless checks as well as a guilty plea to violating his probation for driving under the influence. In relation to these offenses, the Defendant was placed back on probation, which was to be served concurrently with his previous sentence. Another set of judgments showed that on April 21, 2017, the Defendant entered a guilty plea to home improvement services fraud and received a three-year sentence to be served on community corrections after service of six months in jail. On the same date, in a separate case, he also pled guilty to three counts of forgery, for which he received consecutive terms of one year and six months to be served in confinement. A February 2019 order was admitted into evidence showing that the Defendant violated the terms of his community corrections sentence in relation to these cases. Another probation violation warrant filed in December 2017 was admitted into evidence alleging that the Defendant had been placed on probation in December 2017 and that he had violated his probation by failing to report as instructed and by failing to satisfy his financial obligations as ordered by the court. The State argued that these prior probation violations demonstrated the Defendant's "inability to do probation in these sentences" and his "lack of amenability for rehab." The Defendant responded that each time he violated the terms of his probation or community corrections, it was due to a failed drug screening. He further stated that he had not been offered the opportunity to participate in a rehabilitation or treatment program. The Defendant asserted that "[his] life is in shambles because of opioids[,]" and that the previous instances of serving his sentence in confinement "did not fix it." The Defendant requested that the trial court give him the opportunity to go to a drug rehabilitation program.

Based on the Defendant's failed drug test on intake and his repeated noncompliance with court orders despite being given "one chance after another after another," the trial court ordered the Defendant to serve the remainder of his sentence in confinement. The

trial court noted that the Defendant had a history of failing to meet probation requirements, including failing to report, missing the Risks and Needs Assessment, and testing positive for drugs shortly after intake—despite knowing he would be tested. The court emphasized that "past practice is indicative of future performance[,]" and the Defendant's actions show a pattern of disregard for probation terms. The trial court stated that it is "not unsympathetic necessarily to the drug rehab[,]" but "[i]t is just time for the rubber to meet the road[.]" The trial court emphasized that had the Defendant successfully reported to his probation appointments and attended the Risk and Needs Assessment, "the outcome would have been different." The trial court determined that further leniency would be ineffective and revoked the Defendant's probation in full.

The Defendant filed a timely notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred in revoking his probation based solely on an uncorroborated drug screening report. He additionally argues the trial court abused its discretion in fully revoking his probation by failing to consider any alternative to incarceration. The State responds that, because the Defendant did not object to the introduction of the report at the hearing, he waived his challenge to the validity of the report. Further, the State argues that the trial court did not abuse its discretion by revoking the appellant's probation. We agree with the State.

Appellate courts review a trial court's revocation of a defendant's probationary sentence under an abuse of discretion standard with a presumption of reasonableness. State v. Dagnan, 641 S.W.3d 751, 759 (Tenn. 2022). "[P]robation revocation is a two-step consideration on the part of the trial court." Dagnan, 641 S.W.3d at 757. First, the trial court must determine whether to revoke probation. Id. at 753. Second, the trial court is to determine the appropriate consequence to impose upon revocation. Id. While a trial court is required to conduct a probation revocation hearing pursuant to Tennessee Code Annotated section 40-35-311(b), this two-step consideration does not obligate the trial court "to hold an additional or separate hearing to determine the appropriate consequence." Id. Importantly, these are "two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." Id. at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." Id. at 758.

Once the trial court has determined that a violation of probation occurred, it has the discretionary authority to (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary;

or (4) extend the probationary period by up to one year.  See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3-CD, 2013 WL 1136588, at \*2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at \*6 (Tenn. Crim. App. Mar. 18, 2013); Tenn. Code Ann. §§ 40-35-308, -310, -311 (Supp. 2021).

The Defendant first alleges that the trial court abused its discretion in finding that a violation occurred.  He argues that the trial court's admission of the drug screening report violated his confrontation rights and that the trial court's reliance on the report was improper.  Specifically, the Defendant contends that the State failed either to present the technicians who prepared the drug analysis or to show good cause why such persons did not testify.  The State contends that, regardless of whether the drug test report was properly admitted, the Defendant waived this issue by failing to object to the reliability of the report at the probation hearing.  We agree with the State.

Both the United States Constitution and the Tennessee Constitution protect a defendant's right to confront witnesses against him.  U.S. Const. amend. VI; Tenn. Const. art. I, § 9.  This right, however, does not extend to probation revocation hearings.  State v. Walker, 307 S.W.3d 260, 265 (Tenn. 2009) (citing Morrissey v. Brewer, 408 U.S. 471, 481-89 (1972)).  In probation revocation hearings, only the minimum requirements of due process must be met.  State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993) (citing Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973)).  These requirements include a "conditional right to confront and cross-examine adverse witnesses."  Id.  Under this conditional right, the admission of hearsay evidence does not violate the defendant's constitutional rights if the trial court finds that: (1) there is "good cause" to deny the right to confront and cross-examine an adverse witness; and (2) the evidence is reliable.  Id. at 409.  Furthermore, a laboratory report concerning a defendant's drug test may be admitted as evidence in probation revocation proceedings, even if the laboratory technician who conducted the test is not available to testify, provided the report is accompanied by an affidavit that includes "(1) the identity of the person who certified the drug test; (2) a statement of this person's qualifications; (3) a specific description of the method of testing; (4) a statement that the method of testing was the most accurate test for this particular drug; (5) a certification that the test results were reliable and accurate; and (6) a declaration that all established procedures and protocols were followed."  State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997); see Tenn. Code Ann. § 40-35-311(c)(1).

The Defendant cites State v. Wade and argues that his right to confrontation was violated when his probation was revoked solely upon the basis of an uncorroborated laboratory report.  863 S.W.2d 406 (Tenn. 1993).  In Wade, the Tennessee Supreme Court held that a criminal defendant's confrontation rights under the Sixth Amendment to the United States Constitution and Art. 1, § 9 of the Tennessee Constitution are violated when

his probation is revoked solely upon the basis of an unidentified laboratory report, without a showing of good cause as to why the technician preparing the report did not personally appear at the hearing and without proof as to the reliability of the report. Id. at 409; see also State v. Ricker, 875 S.W.2d 687 (Tenn. Crim. App.1994). In that case, the laboratory report was admitted into evidence over the defendant's objection. Id. at 407.

Here, unlike in Wade, the Defendant never objected to the admissibility of the drug report or to Officer Merrell's testimony regarding the report, even when the trial court specifically asked if there was any objection. Rule 36(a) states that appellate relief is typically not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a); see also Tenn. R. Evid. 103(a) (requiring a timely objection as a prerequisite to a finding of error based on the trial court's admission of evidence); State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (holding that a failure to object to otherwise inadmissible evidence renders the evidence admissible). The failure to make a contemporaneous objection constitutes a waiver of the reliability issue on appeal. State v. Lewin, No. M2003-00679-CCA-R3-CD, 2004 WL 578587, at *4 (Tenn. Crim. App. Mar. 22, 2004). The Defendant cannot now complain of the admissibility and reliability of the drug report when he did not challenge it at the probation revocation hearing. Id. We conclude that the trial court properly relied upon the drug report in its determination that a violation of probation occurred. Waiver notwithstanding, a review of the laboratory report and the accompanying affidavit shows that it complies with the statutory guidelines for admissibility of a drug test in a probation revocation hearing. See Tenn. Code Ann. § 40-35-311(c)(1). The Defendant is not entitled to relief.

The Defendant next alleges that the trial court abused its discretion when it ordered him to serve the remainder of his sentence in confinement "without considering lesser sanctions or alternatives such as substance abuse treatment." In considering the appropriate consequence to impose upon revocation, a trial court may consider, but is not limited to, several factors including: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character. Dagnan, 641 S.W.3d at 759 n.5. Consideration of past criminal history is only appropriate in the second part of the two-step analysis. Id. A trial court may also consider a defendant's amenability to correction and whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C); State v. Owens, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), no perm. app. filed. "A trial court's consequence determination analysis is not merely focused on the probationer's rehabilitative needs alone. It must necessarily also consider whether those needs, including substance-use treatment, can be effectively addressed in the community rather than in custody." State v. Banning, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186 (Tenn. Crim. App. Oct. 18, 2022); see State v. Burkett,

No. M2019-02143-CCA-R3-CD, 2021 WL 2417596, at *5 (Tenn. Crim. App. June 14, 2021) ("We cannot say that the trial court abused its discretion by concluding that the Defendant's drug issues would best be treated in a correctional facility rather than in the community."); State v. Clark, No. E2017-00616-CCA-R3-CD, 2017 WL 6547102, at *4 (Tenn. Crim. App. Dec. 21, 2017) (affirming full revocation when "the Defendant was unlikely to be rehabilitated of his drug addiction outside of confinement"); State v. Taylor, No. E2016-01720-CCA-R3-CD, 2017 WL 3085436, at *4 (Tenn. Crim. App. July 20, 2017) ("The trial court did not err by concluding that the Defendant's drug issues would best be treated in a correctional facility rather than in the community.").

The record clearly shows that the trial court considered the Defendant's prior history of probation, past violations of probation, and future amenability to correction in revoking probation. The trial court found that the Defendant "[would]n't abide by the orders of the Court[,]" as evidenced by his repeated probation violations in prior cases and his multiple failures to appear while on probation for the present offense. Contrary to the Defendant's view, the trial court was "not unsympathetic necessarily to the drug rehab." However, after consideration, the trial court properly concluded that other factors outweighed the Defendant's request for substance abuse treatment, including that the Defendant could not be expected to comply with the court's orders. As the trial court observed, "past practice is indicative of future performance, and he has failed a number of times in the past."

We agree with the State that the trial court properly exercised its discretion in determining the consequence of the Defendant's violations. The trial court considered the Defendant's conduct while on probation, including his repeated failures to report, his failure to complete the required Risk and Needs Assessment, and his positive drug test for methamphetamine. The court also considered the Defendant's history of noncompliance and his demonstrated unwillingness to abide by the court's orders, concluding that further probationary or rehabilitative efforts would be ineffective. Because the trial court's analysis was consistent with the considerations outlined in Dagnan, we affirm its judgment.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

s/ Camille R. McMullen
CAMILLE R. MCMULLEN, JUDGE

- 8 -